The Honorable Richard A. Jones

**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE**

DEBORAH R. BEATON,

                  Plaintiff,

    v.

JPMORGAN CHASE BANK, N.A.; and
NORTHWEST TRUSTEE SERVICES, INC.,

               Defendants.

No. 11-CV-872-RAJ

**DEFENDANT NORTHWEST
TRUSTEE SERVICES, INC.'S
MOTION TO DISMISS PLAINTIFF'S
COMPLAINT PURSUANT TO FRCP
12(b)(1) and 12(b)(6)**

**NOTE ON MOTION CALENDAR
[AUGUST 12, 2011]**

## I.    INTRODUCTION & RELIEF REQUESTED

COMES NOW, Defendant Northwest Trustee Services, Inc. ("Northwest Trustee Services") and moves this Court for dismissal, without leave to amend, pursuant to Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction and Fed. R. Civ. P. 12(b)(6) on the grounds that (1) the Court lacks subject matter jurisdiction over the claims and (2) Plaintiff's Verified Complaint for Declaratory and Injunctive Relief ("Complaint") fails to state a claim upon which relief can be granted.

## II.    BACKGROUND

On or about May 25, 2011, Plaintiff filed the underlying lawsuit asserting "causes of action" for Declaratory Judgment and Injunctive Relief. Dkt. 1.[1] The Complaint challenges the

---

[1] Defendant NWTS notes that the Verified Complaint for Declaratory Relief filed by Plaintiff in this matter is virtually identical to at least seven other complaints (or amended complaints) recently filed by

ROUTH
CRABTREE
OLSEN, P.S.

13555 SE 36th St., Ste 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

1    Defendants' standing to foreclose and seeks a preliminary and permanent injunction.

2          On May 26, 2011, the Court entered an Order denying a preliminary injunction noting

3    that notice was not provided to adverse parties. Dkt. 2.

4          On May 27, 2011, the Plaintiff filed a motion for temporary restraining order and motion

5    for preliminary injunction. Dkt. 3 and 4.

6          On May 27, 2011, the Court entered an Order denying Plaintiff's motion for temporary

7    restraining order and motion for preliminary injunction. Dkt. 7.

8          On June 1, 2011, Plaintiff filed an Amended Emergency Motion for Temporary

9    Restraining Order and Amended Motion for Preliminary Injunction. Dkt. 8 and 9.

10         On June 2, 2011, the Court entered an Order denying Plaintiffs' Amended Emergency

11   Motion for Temporary Restraining Order and Amended Motion for Preliminary Injunction. Dkt.

12   13.

13         On June 3, 2011, Plaintiff filed an ex parte request for emergency order cancelling

14   trustee's sale. Dkt. 14.

15         On June 3, 2011, the Court entered an Order denying Plaintiff's ex parte request for

16   emergency order cancelling trustee's sale. Dkt. 16.

17                          **III.    STATEMENT OF FACTS**

18         The following facts are taken from Plaintiff's Complaint, the documents referenced

19   therein, or attached thereto.

20         In August 2006, Plaintiff Deborah R. Beaton ("Plaintiff") obtained a loan from

21   Washington Mutual Bank, NA ("Washington Mutual") in the amount of $271,960.00. The loan

22   was evidenced by a promissory note (the "Note") and secured by a deed of trust (the "Deed of

23   pro se Plaintiffs in the United States District Court of the Western District of Washington. *See Smith, et*
24   *al. v. Northwest Trustee Services, et al.,* Case No. 3:11-cv-05364-RBL; *see also Hanson v. American*
     *Brokers Conduit, et al.,* Case No. 3:11-cv-05287-RBL; *see also St. John, et al. v. Northwest Trustee*
25   *Services, Inc. et al.,* Case No. 3:11-cv-05382-BHS; *see also Beaton v Northwest Trustee Services, Inc. et*
     *al.,* Case No. 3:11-cv-872-RAJ; *see also Mapanao v. Northwest Trustee Services, Inc. et al.,* Case No.
26   2:11-cv-00060-JCC; *see also Pizan, et al. v. HSBC Bank USA, N.A.,* Case No. 3:11-cv-0026-TSZ; *see*
     *also Mapanao v. Northwest Trustee Services, Inc. et al.,* Case No. 2:11-cv-00060-JCC; *see also Thomas*
     *J. Tuttle v. The Bank of New York Mellon, et al.,* Case No. 2:11-cv-00060-JCC; *and see McNellis v.*
     *Mortgage Electronic Registration Systems, Inc.,* Case No. 3:11-cv-05475-RBL.

DEFENDANT NWTS' MOTION
TO DISMISS -2 of 14
CASE NO. 11-cv-872-RAJ

ROUTH
CRABTREE
OLSEN, P.S.

13555 SE 36th St., Ste 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

1   Trust"). *See* Complaint, Exhibit B and ¶ 11; *see also* a true and correct copy of the Note, which has

2   been indorsed in blank attached hereto as Exhibit 1.[2]

3       The Deed of Trust encumbers the real property commonly known as 22650 24th Ave S.,

4   Des Moines, Washington 98198 (the "Property"). The Deed of Trust was recorded on September

5   6, 2006, under King County Auditor's File No. 20060906002231. *Id.*

6       In September 2008, the FDIC placed Washington Mutual into receivership and Chase

7   acquired all assets, including loan servicing rights and obligations of Washington Mutual from the

8   FDIC, including the Plaintiff's Note, Deed of Trust and the Authority to enforce pursuant to a

9   Purchase and Assumption Agreement. *See*

10  www.fdic.gov/about/freedom/Washington_Mutual_P_and_A.pdf, § 201; *see also* Purchase and

11  Assumption Agreement attached as Exhibit 2.[3]

12      Thereafter, Plaintiff defaulted under the terms of the Note and Deed of Trust by failing to

13  make the payment due July 1, 2010, and every payment thereafter due. *See* Complaint, Exhibit D

14  and ¶19.

15      On November 29, 2010, JPMorgan Chase Bank, N.A., as successor in interest to

16  Washington Mutual Bank fka Washington Mutual Bank, FA, recorded an appointment of successor

17  trustee (the "Appointment") naming Northwest Trustee Services the successor trustee. The

18  Appointment was recorded under King County Auditor's File No. 20101201001577. *See*

19  Complaint, Exhibit C and ¶18.

20

21  [2]Because Plaintiff refers extensively in the Complaint to the loan, which is evidenced by the note, the court may consider the contents of both the Note and Beneficiary Declaration hereto attached without turning this motion into one for summary judgment. *See e.g., Shaw v. Hahn*, 56 f.3d 1128, 1129 n. 1 (9th Cir. 1995). "Even if a document is not attached to a complaint, it may be incorporated by reference into a complaint if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim." *Parrino v. FHP, Inc.* 146 F.3d 669, 707 (9th Cir. 1998). In addition to ruling on a 12(b)(6) motion, the court may take judicial notice of facts outside the pleadings. *Mack v. South Bay Beer Distrib., Inc.,* 798 F.2d 1279, 1282 (9th Cir. 1986), *abrogated on other grounds, Astoria Fed. Sav. & Loan Ass'n v. Solimino,* 501 U.S. 104 (1991). *See also In re Cendent Corp Derivative Action Litig.,* 189 F.R.D. 117, 127 (D.N.J. 1999).

22

23

24

25

26  [3] The Court may take judicial notice of this agreement as dozens of courts have. *E.g., Danilyuk v. JPMorgan Chase Bank, NA,* 2010 WL 2679843, *3 (W.D. Wash. 2010) (judicially noticing agreement) (citing cases); *Crawford v. Marion Cnty. Election Bd.*, 553 U.S. 181, 199 n. 18 (2008) (judicially noticing facts from Indiana state website).

ROUTH
CRABTREE
OLSEN, P.S.

13555 SE 36th St., Ste 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

Also, on November 29, 2010, JPMorgan Chase Bank, N.A. executed, and later delivered to Northwest Trustee Services, a declaration (the "Beneficiary Declaration") stating that JPMorgan Chase Bank, N.A. successor in interest to Washington Mutual Bank fka Washington Mutual Bank, FA, beneficiary is the actual holder of the promissory note or other obligation evidencing [Plaintiff's loan] or has the requisite authority under RCW 62A.3-301 to enforce said obligation. *See* Beneficiary Declaration attached as Exhibit 3.

On or about December 16, 2010, Northwest Trustee Services recorded a notice of trustee's sale (the "Notice of Sale") under King County Auditor's File No. 20101216000340, setting a trustee's sale for March 18, 2011. *See* Complaint, Exhibit D and ¶ 19.

On or about June 3, 2011, the Property was sold via a trustee sale. *See* Complaint ¶ 29. Thereafter, a trustee's deed (the "Trustee's Deed") was executed and delivered to the purchasers. *See* Trustee's Deed Attached as Exhibit 4.

## IV.   ISSUES PRESENTED

1. Whether Plaintiff's Complaint should be dismissed as to Northwest Trustee Services for lack of subject matter jurisdiction, pursuant to F.R.C.P. 12(b)(1).

2. Whether Plaintiff's Complaint should be dismissed as to Northwest Trustee Services with prejudice for failure to state a claim upon which relief can be granted, pursuant to F.R.C.P. 12(b)(6).

## V.   EVIDENCE RELIED UPON

Defendant Northwest Trustee Services' Motion to Dismiss is based upon the pleadings and records on file with Court, the undisputed facts and publicly recorded documents of which the Court may take judicial notice, and the authority and argument stated below in support thereof.

## VI.   AUTHORITY & ARGUMENT

**1.   PLAINTIFF'S COMPLAINT MUST BE DISMISSED UNDER FED. R. CIV P. 12(b)(1).**

Federal Rule of Civil Procedure 12(b)(1) requires that "[w]henever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action." *See Kontrick v. Ryan,* 540 U.S. 443, 455, 124 S. Ct. 906, 157 L.

DEFENDANT NWTS' MOTION
TO DISMISS -4 of 14
CASE NO. 11-cv-872-RAJ

ROUTH
CRABTREE
OLSEN, P.S.

13555 SE 36th St., Ste 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

1    Ed. 2d 867 (2004). In making its determination, "under Fed. R. Civ. P. 12(b)(1)..[the Court shall]

2    look and see if the plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the

3    allegations in his complaint are taken as true for the purposes of the motion." *Rance v. D.R.*

4    *Horton, Inc.,* 316 Fed. Appx. 860 (11th Cir. Fla. 2008). In the present case, the Plaintiff has

5    failed to allege any legitimate basis for upon which the Court has subject matter jurisdiction over

6    the present action and it should, therefore, be dismissed.

7         In fact, the only claim concerning jurisdiction included in the Plaintiff's present complaint

8    is the assertion that the Court may maintain jurisdiction pursuant to USC 1819(b)(2)(A), which

9    deems any suit to which the FDIC is a party to be a suit "arising under the laws of the United

10   States" within the meaning of  28 USC § 1331.

11        The FDIC, however, is not and has never been a party to the Plaintiff's suit. Plaintiff is,

12   therefore, not entitled to the jurisdiction granted by USC 1819(b)(2)(A). Although the Plaintiff

13   may assert that the FDIC will eventually become involved in the case, the mere potential for later

14   FDIC involvement is not sufficient for the Court, at present, to maintain jurisdiction over the

15   case. In fact, as explained by the Court in *Vill. Of Oakwood v. State Bank & Trust Co* even if the

16   FDIC actually does become involved, "the FDIC's [later] intervention [in a case] cannot create

17   jurisdiction where none [previously] existed." 481 F.3d 364, 368 (6th Cir. 2007).

18        In addition, "although Plaintiff's complaint requests a Declaratory Judgment, under 28

19   U.S.C. § 2201 (1958) and Fed.R.Civ.P. 57" assessing the status of the Plaintiff's loan, those

20   statues do "not extend the jurisdiction of the federal courts, but [are rather] …procedural

21   remed[ies]…which can only be afforded where another basis of jurisdiction already exists" and

22   the Plaintiff's Complaint includes no other basis for jurisdiction. *Hughes-Bechtol, Inc. v. West*

23   *Virginia Bd. Of Regents*, 527 F. Supp. 1366 (S.D. Ohio 1981). Instead, outside of its request for

24   declaratory relief (which does not itself grant jurisdiction), the Plaintiff's complaint only

25   includes a request, pursuant to a state law (RCW 61.24.130), for injunctive relief between non-

26   diverse parties. Therefore, the Plaintiff's Complaint should be dismissed pursuant to FRCP

     12(b)(1).

DEFENDANT NWTS' MOTION
TO DISMISS -5 of 14
CASE NO. 11-cv-872-RAJ

ROUTH
CRABTREE
OLSEN, P.S.

13555 SE 36th St., Ste 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

**2.    PLAINTIFF'S COMPLAINT MUST BE DISMISSED UNDER FED. R. CIV. P. 12(b)(6).**

**A.    Standard for a Motion to Dismiss Under Fed. R. Civ. P. 12(b)(6).**

A complaint, or any cause of action alleged therein, must be dismissed when it fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). A plaintiff fails to state a claim if his complaint does not allege sufficient facts, which, if true, would provide adequate grounds for his or her entitlement to relief. *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 127 S. Ct. 1955, 1964-65, 167 L.Ed.2d 929 (2007). More recently, in *Ashcroft v. Iqbal,* 556 U.S. __, 129 S.Ct. 1937, 177 L.Ed.2d 868 (2009), the United States Supreme Court expanded upon its reasoning in *Twombly,* stating that:

> The pleading standard under F.R.C.P. 8 does not require "detailed factual allegations," but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." A pleading that offers "labels and conclusions" or a "formulaic recitation of elements of a cause of action will not do." Nor so a complaint suffice if it tenders "naked assertions" devoid of "further factual enhancement."

*Iqbal,* 129 S.Ct. at 1949 (internal citations omitted).

To survive a motion to dismiss, a complaint must contain sufficient factual matter which, if accepted as true, "states a claim to relief that is plausible on its face." *Id.* (citing *Twombly,* 550 U.S. at 570). A claim has facial plausibility when the plaintiff pleads facts that allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* (citing *Twombly,* 550 U.S. at 556). In *Iqbal,* the court reasoned that the "plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant acted unlawfully." *Id.* Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Iqbal,* 129 S.Ct. at 1949 (citing *Twombly,* 550 U.S. at 557).

The Supreme Court outlined two "working principles" for applying the *Twombly* standard in the motion to dismiss context:

//

///

DEFENDANT NWTS' MOTION
TO DISMISS -6 of 14
CASE NO. 11-cv-872-RAJ

ROUTH
CRABTREE
OLSEN, P.S.

13555 SE 36th St., Ste 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

1

2

> [(1)] the tenet that a court must accept as true all the allegations contained in a complaint is inapplicable to legal conclusions…[t]hreadbare recitals of elements of a cause of action, supported by mere conclusory statements, do not suffice [and (2)] only a complaint that states a plausible claim for relief survives a motion to dismiss.

3

4

*Id.* at 1949-50. The Court noted that the determination of whether a complaint states a plausible

5

claim for relief is a context-specific task that requires the reviewing court to draw on its judicial

6

experience and common sense, "but where well-pleaded facts do not permit the court to infer

7

more than the mere possibility of misconduct, the complaint has alleged-but it has not "show[n]"

8

– "that the pleader is entitled to relief." *Id.* at 1950 (citing Fed. Civ. R. P. 8(a)). As additional

9

guidance in applying these principles, the Court stated:

10

> [A] court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement of relief.

11

12

13

*Id.* Application of these pleading standards necessitates dismissal of Plaintiff's causes of

14

action against Defendant Northwest Trustee Services. Here, as in *Iqbal*, Plaintiffs have not

15

"nudged" their claims "across the line from conceivable to plausible." *Iqbal*, 129 S.Ct. at

16

1951 (citing *Twombly*, 550 U.S. at 570).

17

Additionally, the court may consider the contents of documents referenced in the

18

complaint without converting the motion to one for summary judgment. This court may take

19

judicial notice of publicly recorded documents and may consider the documents without turning

20

this motion into one for summary judgment. *See e.g., Shaw v. Hahn*, 56 f.3d 1128, 1129 n. 1 (9th

21

Cir. 1995). The Court may also consider the exhibits to the Complaint, the Note, and the

22

Beneficiary Declaration. *See United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) ("[e]ven

23

if a document is not attached to a complaint, it may be incorporated by reference into a complaint

24

if the plaintiff refers extensively to the document or the document forms the basis of the

25

plaintiff's claim."); *Parrino v. FHP, Inc.* 146 F.3d 669, 707 (9th Cir. 1998) ("A court may

26

consider evidence on which the complaint 'necessarily relies' if: (1) the complaint refers to the

document; (2) the document is central to the plaintiff's claim; and (3) no party questions the

DEFENDANT NWTS' MOTION
TO DISMISS -7 of 14
CASE NO. 11-cv-872-RAJ

ROUTH
CRABTREE
OLSEN, P.S.

13555 SE 36th St., Ste 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

1    authenticity of the copy attached to the 12(b)(6) motion.").

2        In addition to ruling on a 12(b)(6) motion, the court may take judicial notice of facts

3    outside the pleadings. *Mack v. South Bay Beer Distrib., Inc.,* 798 F.2d 1279, 1282 (9th Cir. 1986),

4    *abrogated on other grounds, Astoria Fed. Sav. & Loan Ass'n v. Solimino,* 501 U.S. 104 (1991).

5    *See also In re Cendent Corp Derivative Action Litig.,* 189 F.R.D. 117, 127 (D.N.J. 1999) (in

6    resolving a motion to dismiss, courts may consider the allegations of the complaint, documents

7    attached to or specifically referenced in the complaint, and matters of public record). When this

8    Court considers a motion to dismiss, "documents whose contents are alleged in the complaint

9    and whose authenticity no party questions may be considered." *In re Stacs Elecs. Sec. Litig.,* 89

10   F.3d 1399, 1405 n. 4 (9th Cir. 1996) (quoting *Fecht v. The Price Co.,* 70 F.3d 1078, 1080 n.1 (9th

11   Cir. 1995)).

12        **B.   Plaintiff's Claims Against Northwest Trustee Services are Barred by Statute.**

13        The Plaintiff's Complaint seeks (1) a declaration that Defendants have no legal standing,

14   legal ownership, or equitable interest in the Note and Deed of Trust, (2) a declaration that

15   Washington Mutual failed to adequately and properly convey the beneficial interest of Plaintiff's

16   loan such that the nonjudicial foreclosure is void and/or barred, and (3) a temporary, preliminary,

17   and permanent injunction of the Defendants' Trustee Sale. *See* Complaint, Pg. 7.

18        Washington law creates specific remedies for homeowners who wish to challenge a non-

19   judicial foreclosure and/or a trustee's sale. Once foreclosure has begun, an interested party may

20   halt the proceedings in one of two ways: curing the default or restraining the sale. *Woolworth v.*

21   *Micol Land Co.,* 780 P.2d 264, 266 (Wash. Ct. App. 1989). Because, in the present case, the

22   Plaintiff did not cure the default, her only remedy was to restrain the sale.

23        RCW 61.24.130 provides for the restraint of a trustee's sale, however, this action must be

24   taken *before* the sale, or the interested party is precluded from obtaining relief. *Woolworth,* 780

25   P.2d at 267.  Here, the Plaintiff's attempts to restrain the sale were denied by this Court on four

26   separate occasions. The trustee's sale took place on June 3, 2011. Thus, Plaintiff has, therefore,

     waived her right to enjoin or rescind the sale and the Plaintiff's request for an injunction to

DEFENDANT NWTS' MOTION
TO DISMISS -8 of 14
CASE NO. 11-cv-872-RAJ

ROUTH
CRABTREE
OLSEN, P.S.

13555 SE 36th St., Ste 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

1    prevent that sale is a logical impossibility and is, further, barred by statute.

2         Under RCW 61.24.127, post-sale claims for fraud, misrepresentation, WCPA violations,

3    or the failure of a trustee to comply with RCW 61.24 are permitted. These claims, however, are

4    limited to monetary damages. Here, the Plaintiff has not alleged any of the allowable post-sale

5    claims as to Northwest Trustee Services.

6         In fact, the only alleged violations of RCW 61.24 raised by the Plaintiff's Complaint

7    concern actions taken by "the beneficiary" not the Trustee, which was not involved in the initial

8    creation and execution of the Plaintiff's Note, the transfer of the Note, and has never claimed any

9    ownership or equitable interest in the Note and Deed of Trust.

10        Therefore, even if Plaintiff's Complaint could be construed to assert any claim against

11   Northwest Trustee Services, because the Complaint does not allege fraud, misrepresentation,

12   WCPA violations, or the failure of a trustee to comply with RCW 61.24, any claim as to

13   Northwest Trustee Services is barred.

### C. Plaintiff's Claim for Declaratory Relief if Based Upon Unsupported Allegations that are Insufficient to Defeat a 12(b)(6) Motion to Dismiss.

16        Even if Plaintiff's claims were not barred by statute or could be construed to state a claim

17   as to Northwest Trustee Services, they fail because the evidence shows that prior to the trustee's

18   sale (1) Chase was the holder of the Plaintiff's Note entitled to enforce the Note and Deed of

19   Trust[4], (2) Chase appointed Northwest Trustee Services successor trustee[5], (3) Chase provided

20   the requisite proof to Northwest Trustee Services that it was the note holder prior to the Notice of

[4] Based solely upon its status as holder (and beneficiary as that term is defined by Washington law),
Chase was entitled to enforce the Note and Deed of Trust through nonjudicial foreclosure by directing the
successor trustee, Northwest Trustee Services, to foreclose. Under RCW 61.24.005(2), a "Beneficiary" is
"the holder of the instrument or document evidencing the obligations secured by the deed of trust." RCW
61.24.005(2).Under the DTA, the Beneficiary, or holder, may enforce the underlying obligation, may
appoint a successor trustee, and may take steps in furtherance of the nonjudicial foreclosure. *See* RCW
61.24 *et seq.* Additionally, under UCC Article 3, which governs negotiable instruments, the holder of the
note is a class of persons entitled to enforce an instrument. RCW 62A.3-301. Holder status can be shown
by possession alone where a note is indorsed in blank, as it is here. *See* RCW 62A.3-201; *see also* RCW
62A.3-109.
[5] Under Washington law, a trustee so appointed by a beneficiary may foreclose a deed of trust nonjudicially.
RCW 61.24 *et seq.* The beneficiary has the power to appoint any trustee that is qualified to act as such
pursuant to law. RCW 61.24.010(2).  Upon recording the appointment of a successor trustee...the
successor trustee shall be vested with all powers of an original trustee. *Id.*

DEFENDANT NWTS' MOTION
TO DISMISS -9 of 14
CASE NO. 11-cv-872-RAJ

ROUTH
CRABTREE
OLSEN, P.S.

13555 SE 36th St., Ste 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

Sale[6], and (4) Northwest Trustee Services carried out its role as successor trustee in strict compliance with the Deed of Trust Act. *See* Complaint, Exhibit C; *see also* Exhibit 1, 3, and Complaint, Exhibit D.

No argument raised in the Plaintiff's Complaint, even if assumed to be true, impacts Defendant Chase's interest (as holder of the Note) in the Plaintiff's property, its authority to appoint Northwest Trustee Services as successor trustee, or Northwest Trustee Services' ability to foreclose. Therefore, the Plaintiff's request that the Court quiet title[7] in her name is inappropriate and should be denied.

Nevertheless, the Plaintiff makes a number of assertions alleged to raise 'doubt' as to the rights of the Defendants: (1) a Lack of Recorded Assignment of the Plaintiff's Deed of Trust from Washington Mutual to Chase and (2) Uncertainty as to what rights were transferred from Washington Mutual to Chase.

        **1.**     **Assignment of Plaintiff's Deed of Trust from Washington Mutual to Chase is Unnecessary to Maintain an Interest in or Authority to Appoint a Successor Trustee to Foreclose upon the Plaintiff's Property.**

The Plaintiff's Complaint asserts that "there is a lack of an Assignment of Deed of Trust from Washington Mutual to ...Chase." Plaintiff's Complaint ¶ 20. This assertion is, however, irrelevant to a determination of Chase's interest in the Plaintiff's loan and/or property (and its ability to appoint Northwest Trustee Services as successor trustee) because: (a) as holder of the Note, Chase is entitled to enforce the Note and Deed of Trust even without evidence of a formal assignment and (b) the Chase *was*, in fact, assigned the Plaintiff's Deed of Trust as part of the Purchase and Assumption Agreement.

---

[6] The Deed of Trust Act imposes a requirement upon a Trustee that prior to mailing, posting, or recording a notice of sale, the trustee must have proof that the beneficiary is the owner of any promissory note or other obligation secured by the deed of trust. RCW 61.24.030(7)(a). RCW 61.24.030(7)(a) further states that the requirement of 'proof of ownership' is satisfied by a declaration made by the beneficiary stating that the beneficiary is the actual holder of the note, like the one Northwest Trustee Services received prior to mailing, posting, and recording the Notice of Sale in this case. *See* Exhibit 3.

[7] Additionally, a quiet title claim as to NWTS is misplaced. As foreclosing trustee, NWTS claims no interest in the property. NWTS is simply hired to carry out the nonjudicial foreclosure. Therefore, as to Plaintiff's request to quiet title, it is misdirected at NWTS.

DEFENDANT NWTS' MOTION
TO DISMISS -10 of 14
CASE NO. 11-cv-872-RAJ

ROUTH
CRABTREE
OLSEN, P.S.

13555 SE 36th St., Ste 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

*a. Chase is afforded the same rights of an Assignee of the Plaintiff's Deed of Trust due to its status as 'holder' of the Plaintiff's Note.*

Because the evidence shows Chase was the holder of the Plaintiff's Note, whether or not the Deed of Trust securing that Note was assigned to Chase is irrelevant to its interest in the Property, its authority to appoint Northwest Trustee Services as successor trustee, and Northwest Trustee Services' authority to carry out the foreclosure.

This fact has been well established in a number of federal courts based upon the long held principle that the security interest follows the debt or the Note. *See Carpenter v. Longan*, 83 U.S. 271, 275, 21 L. Ed. 313 (1872) ("The transfer of the note carries with it the security, *without any formal assignment or delivery, or even mention of the latter* …All the authorities agree that the debt is the principal thing and the mortgage an accessory."[emphasis added]). This principle has been described and affirmed, in a long line of cases.[8]

The Plaintiff's Deed of Trust evidences only the Plaintiff's mortgage or the "security interest incident to an underlying obligation, and the transfer of a note necessarily includes a transfer of the mortgage with it." *UMLIC VP, LLC v. Matthias*, 234 F. Supp. 2d 520 (D.V.I. 2002).

Therefore, the fact that Chase held (prior to the trustee's sale) the Plaintiff's Note entitles Chase to precisely the same powers (including the power to appoint a successor trustee) as if there had been a formal Assignment of the Deed of Trust.

---

[8] In re DiSanto & Moore Associates, Inc., 41 Bankr. 935, 938 (C.D. Cal. 1984); Union Supply Co. v. Morris, 220 Cal. 331, 338-39; 30 P.2d 394, 397 (1934); In re Vargas, 396 B.R. 511 (Bankr. C.D. Cal. 2008); In re Leisure Time Sports, Inc., 194 B.R. 859 (9th Cir. 1996); Merritt v. Bartholick, 36 N.Y. 44, 34 How. Pr. 129, 1 Transc. App. 63 (1867); Honore v. Wilshire, 109 Ill. 103, 1884 WL 9777 (Ill. 1884); Ellison v. Daniels, 11 N.H. 274 (1840); Oppe & Slocum v. Jacobus, 10 Iowa 262 (1859); Hough v. Osborne, 7 Ind. 111, 7 Ind. 140(1855); U.S. Bank NA. v. Collymore, 68 A.D.3d 752, 890 N.Y.S.2d 578 (N.Y.A.D. 2009); Northstream Investments Inc. v. 1804 Country Store Co., 2005 SD 61, 697 N.W. 2d 762 (S.D. 2005); Andrews v. Commissioner of Internal Revenue, 38 F.2d 55 (2d Cir. 1930); In re Brager, 39 B.R. 441 (Bankr. Pa. 1984); Bellistri v. Ocwen Loan Servicing LLC, 284 S.W.3d 619 (Mo. App. 2009); In re Wilhelm, 407 B.R. 392 (Bankr. D. Idaho 2009); Jackson v. Mortg. Elec. Registration Sys., 770 N.W.2d 487 (Minn. 2009); Columbus Investments v. Lewis, 48 P.3d 1222 (Colo. 2002); In re Bird, No, 03-52010-JS, 2007 Bankr. LEXIS 3110, 2007 WL 26284265 (Bankr. D. Md. Sept. 7, 2007); Prime Financial Services, LLC v. Vinson, 279 Mich. App. 245, 761 N.W.2d 694 (Mich. App. 2008); Prime Fin. Servs. LLC v. Vinton, 279 Mich. App. 245, 257 (Mich. Ct. App. 2008).

ROUTH
CRABTREE
OLSEN, P.S.

13555 SE 36th St., Ste 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

1

*b. Washington Mutual's Purchase and Assumption Agreement Assigned*
*the Plaintiff's Deed of Trust to Chase.*

2

The Plaintiff's claim is especially inappropriate, however, in the context of loans

3

transferred from Washington Mutual to Chase. When Washington Mutual was placed into

4

receivership, Chase purchased its assets including the Plaintiff's Loan and was assigned a

5

security interest in it by the Purchase and Assumption Agreement. *See* Purchase and Assumption

6

Agreement Attached as Exhibit 2 at 9 ("Assuming Bank hereby purchases from the Receiver,

7

and the Receiver hereby sells, assigns, transfers, conveys and delivers to the Assuming Bank

8

[Chase] all rights, title, and interest of the Receiver in and to all of the assets.") Thus, the

9

recording of an additional Assignment of the Deed of Trust, as suggested by the Plaintiff's

10

Complaint, would have been unnecessary and redundant with the assignment already included in

11

Chase's Purchase and Assumption Agreement.

12

13

      2.      **There is No Uncertainty Concerning the Rights Transferred to Chase**
                   **from Washington Mutual.**

14

Plaintiff's Complaint asserts, without any factual support, that "it is unknown exactly

15

what rights, if any, to the Plaintiff's mortgage loan were transferred." Plaintiff's Complaint ¶ 22.

16

The Plaintiff's assertion of uncertainty concerning Chase's interest in her loan or the Property,

17

however, is contradicted by: (1) the previously mentioned Purchase and Assumption Agreement

18

transferring all assets from Washington Mutual to Chase and (2) the fact that Chase (prior to the

19

trustee's sale) was the holder of the Plaintiff's Note. *See* Exhibit 1; 2, and 3. Each of these

20

documents independently removes any uncertainty as to Chase's legitimate interest in the

21

Plaintiff's loan and its ability to enforce.

22

Nevertheless, the Plaintiff further claims, again without an evidentiary basis for doing so,

23

that her Note and Deed of Trust may not have been "duly and appropriately executed and/or

24

recorded." Complaint ¶19.

25

This is a red herring as no promissory note is ever recorded. Additionally, the Plaintiff

26

does not cite to as there is no provision of Washington law that requires the holder of a note to

DEFENDANT NWTS' MOTION
TO DISMISS -12 of 14
CASE NO. 11-cv-872-RAJ

ROUTH
CRABTREE
OLSEN, P.S.

13555 SE 36th St., Ste 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

1   produce evidence proving 'appropriate execution or recording' or the Note's 'Chain of Title' in

2   order to enforce it.

3        In fact, the Uniform Commercial Code explicitly indicates that an individual may

4   "enforce the instrument *even though the person is not the owner of the instrument* or is in

5   *wrongful possession* of the instrument. [emphasis added]" RCW 62A.3-301. Furthermore, even

6   if the Plaintiff is correct in her claims of 'uncertainty' surrounding the transfer of her Note, it is

7   not grounds for any claim as to the duly appointed successor trustee.

8   //

9   //

10  //

11  //

12  //

13  //

14  //

15  //

16  //

17  //

18  //

19  //

20  //

21  //

22  //

23  //

24  //

25  //

26  ///

DEFENDANT NWTS' MOTION
TO DISMISS -13 of 14
CASE NO. 11-cv-872-RAJ

ROUTH
CRABTREE
OLSEN, P.S.

13555 SE 36th St., Ste 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

## VII.   CONCLUSION

The Plaintiff's Complaint simply does not include a sufficient factual basis to establish a plausible claim against Northwest Trustee Services. In fact, nowhere in Plaintiff's allegations does Plaintiff allege any wrongdoing by Northwest Trustee Services, yet Plaintiff has lumped Northwest Trustee Services into each of her claims. On this basis alone, Northwest Trustee Services is entitled to dismissal.

Nonetheless, because the Plaintiff failed to restrain the trustee's sale, the claims included in the present Complaint are barred. Further, any claims that are not barred by statute concern only the actions of the Defendant Beneficiary and not the Trustee which acted and relied, as it is entitled to do, upon the representations of the Beneficiary at all times relevant to the present action.

Therefore, and based on the foregoing, Defendant Northwest Trustee Services respectfully requests that the Court dismiss the Plaintiff's Complaint as to Northwest Trustee Services, with prejudice.

DATED this 22nd day of July, 2011.

**ROUTH CRABTREE OLSEN, P.S.**

/s/ Heidi E. Buck
Heidi E. Buck, WSBA #41769
Attorneys for Defendant Northwest
Trustee Services, Inc.

DEFENDANT NWTS' MOTION
TO DISMISS -14 of 14
CASE NO. 11-cv-872-RAJ

ROUTH
CRABTREE
OLSEN, P.S.

13555 SE 36th St., Ste 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

5NUS
W09

255-048

# NOTE

AUGUST 28, 2006                    RENTON                    WASHINGTON
     [Date]                         [City]                       [State]

22650 24TH AVE S, DES MOINES, WA 98198
                          [Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $    271,960.00    (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is   WASHINGTON MUTUAL BANK, FA

I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of    6.625    %.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

## 3. PAYMENTS

(A) Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the   1ST   day of each month beginning on   NOVEMBER, 2006 . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on   OCTOBER 01, 2036 I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at   P.O.BOX 78148 PHOENIX, AZ 85062-8148 or at a different place if required by the Note Holder.

(B) Amount of Monthly Payments

My monthly payment will be in the amount of U.S. $   1,741.39

## 4. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

## 5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums

MULTISTATE FIXED RATE NOTE – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

VMP®–5N (0207)
VMP MORTGAGE FORMS – (800)521-7291
Page 1 of 3

Form 3200 1/01

Initials: 



Exhibit 1
Page 1 of 3

already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 6. BORROWER'S FAILURE TO PAY AS REQUIRED

(A) Late Charge for Overdue Payments
If the Note Holder has not received the full amount of any monthly payment by the end of   **15** calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be **5.0** % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

(B) Default
If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

(C) Notice of Default
If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

(D) No Waiver By Note Holder
Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

(E) Payment of Note Holder's Costs and Expenses
If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 7. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 8. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 9. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 10. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

Form 3200 1/01
Initials: _____

**Exhibit 1**
**Page 2 of 3**

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)       _____ (Seal)
                          -Borrower              DEBORAH R BEATON         -Borrower

_____ (Seal)       _____ (Seal)
                          -Borrower                                        -Borrower

_____ (Seal)       _____ (Seal)
                          -Borrower                                        -Borrower

_____ (Seal)       _____ (Seal)
                          -Borrower                                        -Borrower

*(Sign Original Only)*

Pay to the order of

Without Recourse
Washington Mutual Bank, FA

Cynthia A Riley, Vice President

-5N (0207)                         Page 3 of 3                    Form 3200 1/01

**Exhibit 1**
**Page 3 of 3**

PURCHASE AND ASSUMPTION AGREEMENT

<u>WHOLE BANK</u>

AMONG

FEDERAL DEPOSIT INSURANCE CORPORATION,
RECEIVER OF WASHINGTON MUTUAL BANK,
HENDERSON, NEVADA

FEDERAL DEPOSIT INSURANCE CORPORATION

and

JPMORGAN CHASE BANK, NATIONAL ASSOCIATION

DATED AS OF

SEPTEMBER 25, 2008

Exhibit 2
Page 1 of 8

# PURCHASE AND ASSUMPTION AGREEMENT

## WHOLE BANK

**THIS AGREEMENT**, made and entered into as of the 25th day of September, 2008, by and among the **FEDERAL DEPOSIT INSURANCE CORPORATION, RECEIVER of WASHINGTON MUTUAL BANK, HENDERSON, NEVADA** (the "Receiver"), **JPMORGAN CHASE BANK, NATIONAL ASSOCIATION**, organized under the laws of the United States of America, and having its principal place of business in Seattle, Washington (the "Assuming Bank"), and the **FEDERAL DEPOSIT INSURANCE CORPORATION**, organized under the laws of the United States of America and having its principal office in Washington, D.C., acting in its corporate capacity (the "Corporation").

### WITNESSETH:

**WHEREAS**, on Bank Closing, the Chartering Authority closed Washington Mutual Bank (the "Failed Bank") pursuant to applicable law and the Corporation was appointed Receiver thereof; and

**WHEREAS**, the Assuming Bank desires to purchase substantially all of the assets and assume all deposit and substantially all other liabilities of the Failed Bank on the terms and conditions set forth in this Agreement; and

**WHEREAS**, pursuant to 12 U.S.C. Section 1823(c)(2)(A), the Corporation may provide assistance to the Assuming Bank to facilitate the transactions contemplated by this Agreement, which assistance may include indemnification pursuant to Article XII; and

**WHEREAS**, the Board of Directors of the Corporation (the "Board") has determined to provide assistance to the Assuming Bank on the terms and subject to the conditions set forth in this Agreement; and

**WHEREAS**, the Board has determined pursuant to 12 U.S.C. Section 1823(c)(4)(A) that such assistance is necessary to meet the obligation of the Corporation to provide insurance coverage for the insured deposits in the Failed Bank and is the least costly to the deposit insurance fund of all possible methods for meeting such obligation.

**NOW THEREFORE**, in consideration of the mutual promises herein set forth and other valuable consideration, the parties hereto agree as follows:

Exhibit 2
Page 2 of 8

Corporation, the Assuming Bank promptly shall provide to the Corporation schedules of unclaimed deposits in such form as may be prescribed by the Corporation.

**2.4   Omitted**.

**2.5   Borrower Claims**. Notwithstanding anything to the contrary in this Agreement, any liability associated with borrower claims for payment of or liability to any borrower for monetary relief, or that provide for any other form of relief to any borrower, whether or not such liability is reduced to judgment, liquidated or unliquidated, fixed or contingent, matured or unmatured, disputed or undisputed, legal or equitable, judicial or extra-judicial, secured or unsecured, whether asserted affirmatively or defensively, related in any way to any loan or commitment to lend made by the Failed Bank prior to failure, or to any loan made by a third party in connection with a loan which is or was held by the Failed Bank, or otherwise arising in connection with the Failed Bank's lending or loan purchase activities are specifically not assumed by the Assuming Bank.

**ARTICLE III**
**PURCHASE OF ASSETS**

**3.1   Assets Purchased by Assuming Bank**. Subject to Sections 3.5, 3.6 and 4.8, the Assuming Bank hereby purchases from the Receiver, and the Receiver hereby sells, assigns, transfers, conveys, and delivers to the Assuming Bank, all right, title, and interest of the Receiver in and to all of the assets (real, personal and mixed, wherever located and however acquired) including all subsidiaries, joint ventures, partnerships, and any and all other business combinations or arrangements, whether active, inactive, dissolved or terminated, of the Failed Bank whether or not reflected on the books of the Failed Bank as of Bank Closing.  Assets are purchased hereunder by the Assuming Bank subject to all liabilities for indebtedness collateralized by Liens affecting such Assets to the extent provided in Section 2.1.  The subsidiaries, joint ventures, partnerships, and any and all other business combinations or arrangements, whether active, inactive, dissolved or terminated being purchased by the Assuming Bank includes, but is not limited to, the entities listed on Schedule 3.1a.  Notwithstanding Section 4.8, the Assuming Bank specifically purchases all mortgage servicing rights and obligations of the Failed Bank.

**3.2   Asset Purchase Price**.

(a)      All Assets and assets of the Failed Bank subject to an option to purchase by the Assuming Bank shall be purchased for the amount, or the amount resulting from the method specified for determining the amount, as specified on Schedule 3.2, except as otherwise may be provided herein. Any Asset, asset of the Failed Bank subject to an option to purchase or other asset purchased for which no purchase price is specified on Schedule 3.2 or otherwise herein shall be purchased at its Book Value. Loans or other assets charged off the Accounting Records of the Failed Bank prior to the date of Bank Closing shall be purchased at a price of zero.

9

(b)     The purchase price for securities (other than the capital stock of any Acquired Subsidiary) purchased under Section 3.1 by the Assuming Bank shall be the market value thereof as of Bank Closing, which market value shall be (i) the "Mid/Last", or "Trade" (as applicable), market price for each such security quoted at the close of the trading day effective on Bank Closing as published electronically by Bloomberg, L.P.; (ii) provided, that if such market price is not available for any such security, the Assuming Bank will submit a bid for each such security within three days of notification/bid request by the Receiver (unless a different time period is agreed to by the Assuming Bank and the Receiver) and the Receiver, in its sole discretion will accept or reject each such bid; and (iii) further provided in the absence of an acceptable bid from the Assuming Bank, each such security shall not pass to the Assuming Bank and shall be deemed to be an excluded asset hereunder.

(c)     Qualified Financial Contracts shall be purchased at market value determined in accordance with the terms of Exhibit 3.2(c). Any costs associated with such valuation shall be shared equally by the Receiver and the Assuming Bank.

**3.3     Manner of Conveyance; Limited Warranty; Nonrecourse; Etc.** THE CONVEYANCE OF ALL ASSETS, INCLUDING REAL AND PERSONAL PROPERTY INTERESTS, PURCHASED BY THE ASSUMING BANK UNDER THIS AGREEMENT SHALL BE MADE, AS NECESSARY, BY RECEIVER'S DEED OR RECEIVER'S BILL OF SALE, "AS IS", "WHERE IS", WITHOUT RECOURSE AND, EXCEPT AS OTHERWISE SPECIFICALLY PROVIDED IN THIS AGREEMENT, WITHOUT ANY WARRANTIES WHATSOEVER WITH RESPECT TO SUCH ASSETS, EXPRESS OR IMPLIED, WITH RESPECT TO TITLE, ENFORCEABILITY, COLLECTIBILITY, DOCUMENTATION OR FREEDOM FROM LIENS OR ENCUMBRANCES (IN WHOLE OR IN PART), OR ANY OTHER MATTERS.

**3.4     Puts of Assets to the Receiver.**

(a)     **Omitted.**

(b)     **Puts Prior to the Settlement Date.** During the period from Bank Closing to and including the Business Day immediately preceding the Settlement Date, the Assuming Bank shall be entitled to require the Receiver to purchase any Asset which the Assuming Bank can establish is evidenced by forged or stolen instruments as of Bank Closing. The Assuming Bank shall transfer all such Assets to the Receiver without recourse, and shall indemnify the Receiver against any and all claims of any Person claiming by, through or under the Assuming Bank with respect to any such Asset, as provided in Section 12.4.

(c)     **Notices to the Receiver.** In the event that the Assuming Bank elects to require the Receiver to purchase one or more Assets, the Assuming Bank shall deliver to the Receiver a notice (a "Put Notice") which shall include:

(i)     a list of all Assets that the Assuming Bank requires the Receiver to purchase;

10

Execution Copy
Whole Bank P&A

Washington Mutual Bank
Henderson, Nevada

**Exhibit 2
Page 4 of 8**

      (ii)     a list of all Related Liabilities with respect to the Assets identified pursuant to (i) above; and

      (iii)    a statement of the estimated Repurchase Price of each Asset identified pursuant to (i) above as of the applicable Put Date.

Such notice shall be in the form prescribed by the Receiver or such other form to which the Receiver shall consent. As provided in Section 9.6, the Assuming Bank shall deliver to the Receiver such documents, Credit Files and such additional information relating to the subject matter of the Put Notice as the Receiver may request and shall provide to the Receiver full access to all other relevant books and records.

      (d)    **Purchase by Receiver**. The Receiver shall purchase Loans that are specified in the Put Notice and shall assume Related Liabilities with respect to such Loans, and the transfer of such Loans and Related Liabilities shall be effective as of a date determined by the Receiver which date shall not be later than thirty (30) days after receipt by the Receiver of the Credit Files with respect to such Loans (the "Put Date").

      (e)    **Purchase Price and Payment Date**. Each Loan purchased by the Receiver pursuant to this Section 3.4 shall be purchased at a price equal to the Repurchase Price of such Loan less the Related Liability Amount applicable to such Loan, in each case determined as of the applicable Put Date. If the difference between such Repurchase Price and such Related Liability Amount is positive, then the Receiver shall pay to the Assuming Bank the amount of such difference; if the difference between such amounts is negative, then the Assuming Bank shall pay to the Receiver the amount of such difference. The Assuming Bank or the Receiver, as the case may be, shall pay the purchase price determined pursuant to this Section 3.4(e) not later than the twentieth (20th) Business Day following the applicable Put Date, together with interest on such amount at the Settlement Interest Rate for the period from and including such Put Date to and including the day preceding the date upon which payment is made.

      (f)    **Servicing**. The Assuming Bank shall administer and manage any Asset subject to purchase by the Receiver in accordance with usual and prudent banking standards and business practices until such time as such Asset is purchased by the Receiver.

      (g)    **Reversals**. In the event that the Receiver purchases an Asset (and assumes the Related Liability) that it is not required to purchase pursuant to this Section 3.4, the Assuming Bank shall repurchase such Asset (and assume such Related Liability) from the Receiver at a price computed so as to achieve the same economic result as would apply if the Receiver had never purchased such Asset pursuant to this Section 3.4.

    **3.5**    **Assets Not Purchased by Assuming Bank**. The Assuming Bank does not purchase, acquire or assume, or (except as otherwise expressly provided in this Agreement) obtain an option to purchase, acquire or assume under this Agreement the assets or Assets listed on the attached Schedule 3.5.

    **3.6**    **Assets Essential to Receiver**.

Execution Copy
Whole Bank P&A

Washington Mutual Bank
Henderson, Nevada

**Exhibit 2
Page 5 of 8**

(a)    The Receiver may refuse to sell to the Assuming Bank, or the Assuming Bank agrees, at the request of the Receiver set forth in a written notice to the Assuming Bank, to assign, transfer, convey, and deliver to the Receiver all of the Assuming Bank's right, title and interest in and to, any Asset or asset essential to the Receiver as determined by the Receiver in its discretion (together with all Credit Documents evidencing or pertaining thereto), which may include any Asset or asset that the Receiver determines to be:

> (i)    made to an officer, director, or other Person engaging in the affairs of the Failed Bank, its Subsidiaries or Affiliates or any related entities of any of the foregoing;

> (ii)   the subject of any investigation relating to any claim with respect to any item described in Section 3.5(a) or (b), or the subject of, or potentially the subject of, any legal proceedings;

> (iii)  made to a Person who is an Obligor on a loan owned by the Receiver or the Corporation in its corporate capacity or its capacity as receiver of any institution;

> (iv)   secured by collateral which also secures any asset owned by the Receiver; or

> (v)    related to any asset of the Failed Bank not purchased by the Assuming Bank under this Article III or any liability of the Failed Bank not assumed by the Assuming Bank under Article II.

(b)    Each such Asset or asset purchased by the Receiver shall be purchased at a price equal to the Repurchase Price thereof less the Related Liability Amount with respect to any Related Liabilities related to such Asset or asset, in each case determined as of the date of the notice provided by the Receiver pursuant to Section 3.6(a). The Receiver shall pay the Assuming Bank not later than the twentieth (20th) Business Day following receipt of related Credit Documents and Credit Files together with interest on such amount at the Settlement Interest Rate for the period from and including the date of receipt of such documents to and including the day preceding the day on which payment is made. The Assuming Bank agrees to administer and manage each such Asset or asset in accordance with usual and prudent banking standards and business practices until each such Asset or asset is purchased by the Receiver. All transfers with respect to Asset or assets under this Section 3.6 shall be made as provided in Section 9.6. The Assuming Bank shall transfer all such Asset or assets and Related Liabilities to the Receiver without recourse, and shall indemnify the Receiver against any and all claims of any Person claiming by, through or under the Assuming Bank with respect to any such Asset or asset, as provided in Section 12.4.

## ARTICLE IV

12

Execution Copy
Whole Bank P&A

Washington Mutual Bank
Henderson, Nevada

Exhibit 2
Page 6 of 8

**IN WITNESS WHEREOF**, the parties hereto have caused this Agreement to be executed by their duly authorized representatives as of the date first above written.

FEDERAL DEPOSIT INSURANCE CORPORATION,
RECEIVER OF: WASHINGTON MUTUAL BANK,
HENDERSON, NEVADA

BY:_____

NAME: Mitchell L. Glassman
TITLE: Director

Attest:

_____

FEDERAL DEPOSIT INSURANCE CORPORATION

BY: _____

NAME: Mitchell L. Glassman
TITLE: Director

Attest:

_____

JPMORGAN CHASE BANK, NATIONAL
ASSOCIATION

BY:_____

NAME: Brian A. Bessey
TITLE: Senior Vice President

Attest:

33

Execution Copy
Whole Bank P&A

Washington Mutual Bank
Henderson, Nevada

Exhibit 2
Page 7 of 8

**IN WITNESS WHEREOF**, the parties hereto have caused this Agreement to be executed by their duly authorized representatives as of the date first above written.

FEDERAL DEPOSIT INSURANCE CORPORATION,
RECEIVER OF:  WASHINGTON MUTUAL BANK,
HENDERSON, NEVADA

BY: *Mitchell L. Glassman*

NAME:  Mitchell L. Glassman
TITLE:  Director

Attest:

_____

FEDERAL DEPOSIT INSURANCE CORPORATION

BY: *Mitchell L. Glassman*

NAME:  Mitchell L. Glassman
TITLE:  Director

Attest:

_____

JPMORGAN CHASE BANK, NATIONAL
ASSOCIATION

BY:_____

NAME:  Brian A. Bessey
TITLE:  Senior Vice President

Attest:

_____

33

Washington Mutual Bank
Henderson, Nevada

Exhibit 2
Page 8 of 8

BENEFICIARY DECLARATION
(NOTE HOLDER)
(Executed by Officer of Beneficiary)

Loan No _____ 255
Property Address: 22650 24th Avenue South, Des Moines, WA  98198

The undersigned, under penalty of perjury declares as follows:

JPMorgan Chase Bank, N.A. successor in interest to Washington Mutual Bank fka Washington Mutual Bank, FA is the actual holder of the promissory note or other obligation evidencing the above-referenced loan or has requisite authority under RCW 62A.3-301 to enforce said obligation.

The trustee may rely upon the truth and accuracy of the averments made in this declaration.

Dated this 29 Th day of NOVEMBER, 2010 in _____ Jacksonville _____ , _____ Florida _____ .

JPMorgan Chase Bank, N.A. successor in interest to Washington Mutual Bank fka Washington Mutual Bank, FA, beneficiary

By _____ Ediba Trivuncic _____
Its _____ Foreclosure Officer _____

**OR** _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _

BENEFICIARY DECLARATION
(NOTE HOLDER)
(Attorney in Fact for Beneficiary)

Loan No _____ 255

The undersigned, under penalty of perjury declares as follows:

JPMorgan Chase Bank, N.A. successor in interest to Washington Mutual Bank fka Washington Mutual Bank, FA is the actual holder of the promissory note or other obligation evidencing the above-referenced loan or has requisite authority under RCW 62A.3-301 to enforce said obligation.

The trustee may rely upon the truth and accuracy of the averments made in this declaration.

Dated this ____ day of _____, 20___ in _____, _____ .

JPMorgan Chase Bank, N.A. successor in interest to Washington Mutual Bank fka Washington Mutual Bank, FA, beneficiary
_____, its Attorney in Fact

By _____
Its _____

Exhibit 3
Page 1 of 2

NWTS #:7763.28416
Matter name: Beaton, Deborah R.

Exhibit 3
Page 2 of 2

After Recording Return To:
Juliet Sims and Eastside Funding, LLC for security purposes only
3933 Lake Washington Blvd NE #100
Kirkland, WA  98033

File No.:  7763.28416/Beaton, Deborah R.

# Trustee's Deed

The GRANTOR, Northwest Trustee Services, Inc., as present Trustee under that Deed of Trust (defined below), in consideration of the premises and payment recited below, hereby grants and conveys, without representation or warranty, expressed or implied, to Juliet Sims and Eastside Funding, LLC for security purposes only, as GRANTEE, all real property (the Property), situated in the County of King, State of Washington, described as follows:

Tax Parcel No.: 162204-9155-06

The West 182 feet of the East 342 feet of the following described Tract: the South half of the Southwest Quarter of the Northwest Quarter of the Northeast Quarter of Section 16, Township 22 North, Range 4 East, W.M., Records of King County, Washington; except the South 140 feet thereof; except the North 75 feet thereof; together with the North 20 feet of the South 160 feet of the South half of the Southwest Quarter of the Northwest Quarter of the Northeast Quarter of Section 16, Township 22 North, Range 4 East, W.M., except the East 342 feet thereof; and except that portion West of the East margin of 24th Place South.

RECITALS:

1.  This conveyance is made pursuant to the powers, including the power of sale, conferred upon the Grantee by that certain Deed of Trust between Deborah R. Beaton, an unmarried individual, as Grantor, to Ticor Title Company, as Trustee, and Washington Mutual Bank, F.A. nka JPMorgan Chase Bank, N.A. successor in interest to Washington Mutual Bank fka Washington Mutual Bank, FA, Beneficiary, dated 08/28/06, recorded 09/06/06, under Auditor's/Recorder's No. 20060906002231, records of King County, Washington.

2.  The Deed of Trust was executed to secure, together with other undertakings, the payment of one or more promissory note(s) ("Note") in the sum of $271,960.00 with interest thereon, according to the terms thereof, in favor of Washington Mutual Bank, F.A. nka JPMorgan Chase Bank, N.A. successor in interest to Washington Mutual Bank fka Washington Mutual Bank, FA and to secure any other sums of money which might become due and payable under the terms of said Deed of Trust.

3.  The Deed of Trust provided that the Property is not used principally for agricultural or farming purposes and the Grantor has no actual knowledge that the Property is used principally for agricultural or farming purposes.

4.  Default having occurred in the obligations secured and/or covenants of the Deed of Trust grantor, as set forth in Notice of Trustee's Sale described below, which by the terms of the Deed of Trust make operative the power to sell, the thirty-day advance Notice of Default was transmitted to the Deed of Trust grantor, or his successor in interest, and a copy of said Notice was posted or served in accordance with law.

5.  JPMorgan Chase Bank, N.A. successor in interest to Washington Mutual Bank fka Washington Mutual Bank, FA, being then the holder of the indebtedness secured by the Deed of Trust, delivered to said

**Exhibit 4**
**Page 1 of 2**

Grantor a written request directing Grantor to sell the Property in accordance with law and the terms of the Deed of Trust.

6.  The defaults specified in the "Notice of Default" not having been cured, the Grantor, in compliance with the terms of the Deed of Trust, executed and on 12/16/10, recorded in the office of the Auditor of King County, Washington, a " Notice of Trustee's Sale" of the Property under Auditor's File No. 20101216000340.

7.  The Grantor, in the "Notice of Trustee's Sale", fixed the place of sale as The northwest corner of the ground level parking area located under the Pacific Corporate Center building, 13555 SE 36th Street, City of Bellevue, State of Washington a public place, at 10:00 o'clock a.m., and in accordance with the law caused copies of the statutory "Notice of Trustee's Sale" to be transmitted by mail to all persons entitled thereto and either posted or served prior to 90 days before the sale; further, the Grantor caused a copy of said "Notice of Trustee's Sale" to be published in a legal newspaper in each county in which the property or any part thereof is situated, once between the thirty-fifth and twenty-eighth day before the date of sale, and once between the fourteenth and the seventh day before the date of sale; and further, included with the Notice, which was transmitted to or served upon the Deed of Trust grantor or his successor in interest, a "Notice of Foreclosure" in substantially the statutory form, to which copies of the Note and Deed of Trust were attached.

8.  During foreclosure, no action by the Beneficiary, its successors or assigns was pending on an obligation secured by the Deed of Trust.

9.  All legal requirements and all provisions of said Deed of Trust have been complied with, as to acts to be performed and notices to be given, as provided in chapter 61.24 RCW.

10. The defaults specified in the "Notice of Trustee's Sale" not having been cured ten days prior to the date of Trustee's Sale and said obligation secured by said Deed of Trust remaining unpaid, on June 3, 2011, the date of sale, which was not less than 190 days from the date of default in the obligation secured, the Grantor then and there sold the Property at public auction to said Grantee, the highest bidder therefore, for the sum of $156,000.00 cash.

This conveyance is made without representations or warranties of any kind, expressed or implied.  By recording this Trustee's Deed, Grantee understands, acknowledges and agrees that the Property was purchased in the context of a foreclosure, that the trustee made no representations to Grantee concerning the Property and that the trustee owed no duty to make disclosures to Grantee concerning the Property, Grantee relying solely upon his/her/their/its own due diligence investigation before electing to bid for the Property.

DATED: June 15, 2011

**NORTHWEST TRUSTEE SERVICES, INC.**

BY: _____
    Heather Westfall, Assistant Vice President

State of Washington    )
County of King         )

I Julie Bouffleur, Notary certify that I know or have satisfactory evidence that Heather Westfall is the person who appeared before me, and said person acknowledged that (he/she) signed this instrument, on oath stated that (he/she) was authorized to execute the instrument and acknowledged (he/she) as the Assistant Vice President of Northwest Trustee Services, Inc. to be the free and voluntary act of such party for the uses and purposes mentioned in the instrument.

Dated: June 15, 2011

NOTARY PUBLIC in and for the State of
Washington, residing at King Co.
My          commission          expires:          2/23/2013

JULIE BOUFFLEUR
STATE OF WASHINGTON
NOTARY PUBLIC
COMMISSION EXPIRES
02-23-13

**Exhibit 4**
**Page 2 of 2**