1

2

____ FILED        ____ ENTERED
____ LODGED       ____ RECEIVED

THE HONORABLE RICHARD A. JONES

AUG 0 5 2011      RE

3

AT SEATTLE
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
BY_____ DEPUTY

4

**11-CV-872 -REQ**

5

6

7

# UNITED STATES DISTRICT COURT

8

for the

## WESTERN DISTRICT OF WASHINGTON AT SEATTLE

9

| | |
|---|---|
| DEBORAH R. BEATON,       ) | CASE NO. 2:11-cv-00872-RAJ |
|          Plaintiff,     ) | |
|      v.            ) | PROPOSED |
| JPMORGAN CHASE BANK, N.A.; and ) | AMENDED VERIFIED COMPLAINT |
| NORTHWEST TRUSTEE SERVICES, INC. ) | FOR DAMAGES |
|         Defendants,    ) | |
| _____ ) | JURY TRIAL DEMANDED |

15

Plaintiff, DEBORAH R. BEATON, proceeding without counsel, hereby serves her First

16

Amended Verified Complaint with attached Exhibits "A"–"G", supported by her Affidavit of

17

Note Maker and Plaintiff's Memorandum and alleges claims against Defendants

18

NORTHWEST TRUSTEE SERVICES, INC. and JPMORGAN CHASE BANK, N.A., and

19

as grounds states:

20

21

    1. Plaintiff DEBORAH R. BEATON is a *sui juris* resident of the State of Washington

22

       and over the age of eighteen (18), and was, at the times relevant, the legal owner

23

       of the residential property identified hereinbelow as <u>22650 24th Avenue South,</u>

24

       <u>Des Moines, WA 98198.</u>

25

26

FIRST AMENDED VERIFIED COMPLAINT

**Deborah R. Beaton, Plaintiff**
**31431 46th Pl SW**
**Federal Way, WA 98023**
**(509) 499-1607**

2. Defendant, JPMORGAN CHASE BANK N.A. (hereinafter "CHASE") is a national association whose address is <u>270 Park Avenue, New York, NY 10017.</u>

3. Defendant, NORTHWEST TRUSTEE SERVICES, INC., is a Washington Corporation which affirmatively represented to the Plaintiff herein in writing that its registered agent: Jefferey Stenmen <u>13555 SE 36th St., Bellevue, WA 98006</u> accepts service for the Defendant, NORTHWEST TRUSTEE SERVICES, INC.

4. The residential property the subject of this action (hereafter the "Property") is located at <u>22650 24th Avenue South, Des Moines, WA 98198</u> in King County, Washington (APN 162204-9155) and is legally described as:

> W 182 FT OF E 342 FT OF S ½ OF SW ¼ OF NW ¼ OF NE ¼ LESS 140 FT & N 20 FT OF S 160 FT OF S ½ OF SW ¼ OF NW ¼ OF NE ¼ LY E OF 24TH PL S LESS E 342 FT LESS N 75 FT KING COUNTY, WASHINGTON, SITUATED IN THE COUNTY OF KING, STATE OF WASHINGTON.

5. Venue is proper in this Court under 28 USC §1391 because the affected subject Property is located in Washington; the Defendants have substantial contacts within Washington; the substantial events and acts necessary or precedent to the bringing of this lawsuit occurred or accrued in King County, Washington.

6. Plaintiff is proceeding Pro Se, without assistance of counsel and is unschooled in law, requesting the court accept direction from *Haines v. Kerner*, 404 U.S. 519 (1972), *Boag v. MacDougall*, 545 US 360 (1982), *Puckett v. Cox* 456 F2d 233 (1972 Sixth Circuit USCA), and *Conely v. Gibson*, 355 US 41 at 48(1957), wherein the court has directed those who are unschooled in law, making pleadings shall have the court look to the substance of the pleadings rather than the form.

FIRST AMENDED VERIFIED COMPLAINT

**Deborah R. Beaton, Plaintiff**
**31431 46th Pl SW**
**Federal Way, WA 98023**
**(509) 499-1607**

## JURISDICTION

7. This action arises under Federal Question 28 USC §1331 and this Court has Jurisdiction under 15 USC §1640 TILA; 12 USC §2601-2609 RESPA and implementing regulations 24 CFR part 3500; 15 USC §§ 41-58, FTCA and implementing regulations 16 CFR §433.2; 15 USC §1692 FDCPA; 15 USC §1608 FCRA; 42 USC §§1981-1986, Equal Rights Act; 31 USC §5311 Banking Secrecy Act/Patriot Act and implementing regulations 31 CFR §103.11; 5 USC § 552, The Privacy Act; 12 USC §5301 Dodd-Frank Wall Street Reform and Consumer Protection Act (P.L. 111-203); 26 USC § 856, §2039, §2041, §2514b and other provisions of the U.S. Tax Code; 12 USC §1819(b)(2)(A) if FDIC receivership is found to be involved.

8. This Court has supplemental jurisdiction over any remaining state law claims under 28 USC §1367(a) because the state law claims are so related to the federal claims that they form part of the same case or controversy.

9. This case also arises under the Washington Deed of Trust Act, RCW 61.24 *et. seq* (DTA) and the Washington Consumer Protection Act, RCW 19.86 (CPA), the Commercial Code RCW 62A, the Washington Securities Act, RCW 61.20.

## Material Facts Common to All Counts

10. The chain of title for the subject Property shows the Plaintiff holding undisputed clear legal title and equitable title up until August 29, 2006, pursuant to the Quit Claim Deed recorded in King County, Washington under Auditor's file number 20060906002230 (copy attached).

FIRST AMENDED VERIFIED COMPLAINT

11. Plaintiff is the author of the unregistered/unsecured Note referenced in the common law document entitled "Deed of Trust" recorded in King County, WA, under Auditor's file no. 20060906002231 (copy attached) and Plaintiff dictated the terms of the unregistered Note and Plaintiff has personal firsthand knowledge of the said terms.

12. There is no evidence the Plaintiff's unregistered/unsecured Note and or Deed of Trust was or is registered/secured in the WASHINGTON UCC registry or subject to Uniform Commercial Code which Washington has codified as RCW 62A.

13. Pursuant to Plaintiff's Affidavit, Plaintiff has seen no evidence that the Note relied upon by the Defendant(s) is the same Note referenced in the said Deed of Trust and thus Plaintiff disputes the validity of the alleged debt.

14. Pursuant to Plaintiff's Affidavit, Plaintiff has seen no evidence that the Beneficiary in fact accelerated the Note due date or declared the Plaintiff in default.

15. Plaintiff has not acquiesced to the Defendant(s) non-judicial foreclosure proceedings.

16. On or about December 16, 2010, Defendant(s) slandered title to the subject Property and injured the Plaintiff by recording a Notice of Trustee Sale in the public records of King County, Washington under Auditor's File No. 20101216000340.

17. On or about June 3, 2011, Defendant(s) sold Plaintiff's subject Property at Trustee's Sale and injuring the Plaintiff.

## CLAIMS FOR RELIEF:

18. The Plaintiff incorporates all preceding paragraphs in these allegations.

19. Disparity. There is a federal question as follows: to contest an alleged default, to

FIRST AMENDED VERIFIED COMPLAINT

**Deborah R. Beaton, Plaintiff**
**31431 46th Pl SW**
**Federal Way, WA 98023**
**(509) 499-1607**

restrain a Trustee's Sale, to contest a Trustee's material violations pursuant to

Washington's DTA (**RCW 61.24. et. seq.; esp. RCW 61.24.030(8)(j), RCW 61.24.127, RCW**

**61.24.130**) the Plaintiff's only remedy is recourse to the Courts; but, the Courts have

deemed that requests for production of the Note lack merit[1]. Plaintiff is <u>potentially</u> cut

off from the said remedy unless *Equity* provides a balance, which it can, by also

barring any '<u>alleged</u>' default under that Note to avoid creating a "disparity" between

classes of persons (borrower and lender), a violation of civil rights. The DTA confers

no power to foreclose a contested 'alleged' default and there is no other law requiring

the Plaintiff to produce actual payment or proof of payment to cure an 'alleged'

default for obvious reasons. It could be extortive if the default is falsely alleged and

strip the Plaintiff of basic civil rights protected under title 42 USC §§1981-1986 if not

somehow balanced by the Court. This case was originally filed before the Trustee's

Sale occurred and the alleged default was contested but the Court presumed the

Defendant's claim on the Note and claim of alleged default as if totally proven facts

and denied Plaintiff's motions to restrain the Trustee's Sale, nonetheless the Plaintiff

still has the right to demand proof of the Defendant's 'alleged' default and is entitled

---

[1] See *Mansour v. Cal-W. Reconveyance Corp.*, 618 F. Supp. 2d. 1178, 1181 (D. Ariz. 2009), ["Courts have routinely held that Plaintiff's 'show me the note' argument lacks merit."], citing *Ernestberg v. Mortgage Investors Group*, No. 2:08-cv-01304-RCJ-RJJ, 2009 WL 160241, at *5 (D.Neve. Jan. 22, 2009); *Putkkuri v. Recontrust Co.*, No. 08-cv-1919-WQH (AJB), 2009 WL 32567, at *2 (S.D. Cal. Jan. 5, 2009); *San Diego Home Solutions, Inc. v. Recontrust Co.*, No. 08-cv-1970 L(AJB), 2008 WL 5209972, at *2 (S.D.Cal. Dec. 10, 2008); *Wayne v. HomeEq Servicing, Inc.*, No. 2:08-cv-00781-RCJ-LRL, 2008 WL 4642595, at *3 (D.Nev. Oct. 16, 2008); as well as; *Freeston v. Bishop, White & Marshall, P.S.* [2010 WL 1186276] (W.D. Wash., Mar. 24, 2010.)(quoting *Diessner v. Mortgage Electronic Registration Systems*, 618 F.Supp.2d 1184, 1187, (D. Ariz. 2009) (collecting case)); *Wright v. Accredited Home Lenders*, [2011 WL 39027 (W.D. Wash., Jan 3, 2011)(citing *Freeston*, [2010 WL 1186276]).

FIRST AMENDED VERIFIED COMPLAINT

**Deborah R. Beaton, Plaintiff**
**31431 46th Pl SW**
**Federal Way, WA 98023**
**(509) 499-1607**

to relief if the proof is not provided.

20. Breach of Contract - unanswered QWR: Plaintiff sent a Qualified Written Request to the Defendant, CHASE, and to date Plaintiff has never received any response and/or received an inadequate response that failed to comply with 12 U.S.C. § 2605(e). Plaintiff disputes that the Defendant, CHASE is/was in compliance with RESPA at the time of trustee's sale. A copy of the Plaintiff's Qualified Written Request is attached as an exhibit.

21. Equitable Estoppel - invalid debt: Plaintiff alleges that Defendant, NWTS is in violation of the Fair Debt Collection Practices Act (FDCPA), 15 USC §1692 – 1692p. Plaintiff disputes the alleged debt. Plaintiff has received no verification of the debt to date. The Defendants were required to cease and desist collection activities until the debt was verified but instead foreclosed the subject Property under an unsecured Note.

Secondly, it appears the Defendant CHASE is a factor/purchaser of defaulted and or deeply discounted loans. Therefore the Defendant CHASE would also be subject to the FDCPA but failed to offer to validate the debt, never sent a dunning letter, and not only threatened but took non-judicial action to collect the unsecured alleged debt all of which violates FDCPA.

Third, Washington law provides that recordation of an Assignment of Deed of Trust may be omitted because the DOT follows the Note; however RCW 61.24.020 clearly states that Deed of Trust are subject to mortgage laws and, in this particular case, by failing to recorded an assignment, the Defendants failed to establish their lien

FIRST AMENDED VERIFIED COMPLAINT

**Deborah R. Beaton, Plaintiff**
**31431 46ᵗʰ Pl SW**
**Federal Way, WA 98023**
**(509) 499-1607**

priority pursuant to RCW 65.08.070. Nonetheless, it appears under Washington law the other way to establish a lien priority (perfect a security interest) is by an unbroken chain of endorsements of the Note. This means each successive intermediary holder must endorse the Note to the next holder. Blank or incomplete endorsements obviously break the chain and unsecure the identity of the lien holder from the public record and Deed of Trust. Here, the Defendants have neither assignments nor endorsements. RCW 62A.3.301 'person entitled to enforce' arguments fail in the instant matter. Thus, Defendants foreclosed an unsecured Note and violated the Fair Debt Collection Practices Act (FDCPA), Materially violated the DTA, violated the Plaintiff's civil rights to contract pursuant to 42 USC §1981-§1986. These violations did not exist when the former complaints were filed, and only became material after the Trustee's Sale, thus the Plaintiff will require leave to amend the complaint accordingly.

22. Erroneous Credit Reporting: Defendant, CHASE violated the Fair Credit Reporting Act (FCRA), 15 USC § 1608, by reporting of the alleged debt/obligation on the Plaintiff's credit report. Plaintiff properly disputed this alleged debt to Chase. Plaintiff properly disputed this alleged debt to credit reporting companies. To date Plaintiff has received no validation of the debt but the matter remains on Plaintiff's credit report at the request of Defendant CHASE and received no response. A copy of the Plaintiff's dispute letter is attached as an exhibit.

23. Fraudulent Foreclosure of Incorrect Note: The Note the Defendant represented as the original and foreclosed on is not believed to be the Note the Plaintiff made. See

FIRST AMENDED VERIFIED COMPLAINT

**Deborah R. Beaton, Plaintiff**
**31431 46th Pl SW**
**Federal Way, WA 98023**
**(509) 499-1607**

Deborah R. Beaton's Affidavit of Note Maker. Materially there is no nexus between the Note the Defendant foreclosed on and the Note the Plaintiff made. The Note copy relied upon by the Defendant(s) suggests that they knew or should have suspected it was false but vehemently chose to act on it anyway as evidenced by the Trustee's Sale. When the Plaintiff made her Note she had no knowledge of this fact, that she made a Note and it would be used as a basis to defraud her via an 'alleged' default and that the public would be victimized by the fraud as well. The Plaintiff disputes the authenticity of the purported Note relied upon by the Defendants. Plaintiff is entitled to actual damages, relocation costs, plus other related costs and fees for this lawsuit as well as treble damages pursuant to RCW 19.86. See *Stiley v. Block*, 130 Wn. 2d 486, 505 (1996); *Schwartz v. KMPG LLP*, 476 F.3d 756, 764 (9th Cir. 2007); *Plein v. Lackey*, 149 Wn. 2d 214, 229 (2003).

24. <u>Forfeiture on Foreclosure</u>: Ordinarily the Lenders like the original Lender WASHINGTON MUTUAL BANK, FA are required to use accrual accounting which requires them to report the entire $354,940.40 of interest income receivable on the Plaintiff's purported loan account as income for tax year the loan closed <u>unless</u> they transferred the purported Loan to a tax exempt REMIC/REIT within 90 days of closing (26 USC §856). Defendant CHASE does not appear to be a tax exempt REMIC/REIT. Thus, Plaintiff believes there is an unresolved tax matter and if so the Defendant NWTS's the sale of the Plaintiff's property was a Prohibited Transaction pursuant to 26 USC §857(b)(6)(B)(iii) and §1221(a)(1). If these taxes were not paid, Plaintiff as the 'donor' has the right pay them and invoke the right of recoupment and

FIRST AMENDED VERIFIED COMPLAINT

**Deborah R. Beaton, Plaintiff**
**31431 46th Pl SW**
**Federal Way, WA 98023**
**(509) 499-1607**

setoff. "The donor may be deemed to have paid the tax by ordering the donee to pay it to the IRS." *Estate of Sachs v. Comm'r*, 88 T.C. 769, 778 (1987), aff'd F.2d (1988 WL 94421)(1988). Plaintiff HEREBY orders the donee and/or donee's successor in interest to pay the tax due to the IRS.

25. Recoupment and Setoff: Pursuant to 15 USC §77b(a)(1); 15 USC § 78c(a)(10); RCW 21.20.005(12)(a); RCW 21.20.310(9) the Plaintiff's Note is in fact a non-negotiable Security (financial asset). It guarantees Plaintiff the right of recoupment and setoff pursuant to CFR 16 § 433.2, 15 U.S.C. §1640 if the loan contract is breached. It was taken subject to the Plaintiff's claims and defenses. There is no evidence of the Defendant(s) standing to foreclose non-judicially.

26. Material Violations – Washington Deed of Trust Act. The Beneficiary's Declaration does not comply with RCW 61.24.005(2) but instead relies upon the RCW 62A.3.301. This declaration fails because the true Beneficiary, as defined by RCW 61.24.005(2), must assert its own legal rights and may not assert the legal rights of others. *Sprint*, 554 U.S. as 289; *Warth*, 422 U.S. at 499; *Oregon v. Legal Servs. Corp.*, 552 F.3d 965, 971 (9th Cir. 2009).

Furthermore, *In re: Veal*, Bk. No. 09-14808, 9th Cir. BAP, June 10, 2011, Case No. 10-1055 [2011 WL 2304200], Chapter III. Discussion §(B)(1) page 17: (underline and emboldened printed is added for emphasis only) **"Here, the parties assume that the Uniform Commercial Code ("UCC") applies to the Note. If correct, ….".** This brings into question whether the UCC applies to Plaintiff's Note and Deed of Trust at all since the Note Maker / Plaintiff never intended for it to.

FIRST AMENDED VERIFIED COMPLAINT

Deborah R. Beaton, Plaintiff
31431 46th Pl SW
Federal Way, WA 98023
(509) 499-1607

Lastly, in *Pavino v. Bank of America*, USDC WDWA Case No. 2:10-cv-01943-RSL, Order dated 03/04/2011, §C (Dkt. 26), the Court ruled there is no legal authority holding that a "person entitled to enforce" an instrument within the meaning of RCW 62A.3-301 qualifies as a "beneficiary" within the meaning of RCW 61.24.005(2).

27. Slander of Title – Notice of Trustee's Sale. There is no evidence that the Defendant(s) were within the statutory and equitable parameters required when they executed the Notice of Default and recorded the Notice of Trustee's Sale which slandered title to the Plaintiff's property and led to the loss of the property. The Notice of Default only alleges a default it does not prove a default. The Defendants foreclosure process is a scandalous and impertinent inference that the Plaintiff defaulted/failed to pay her obligation, not a proven fact. Defendant(s) slandered title and injured the Plaintiff by recording the Notice of Trustee's Sale as evidenced by the Trustee's Deed.

**WHEREFORE,** the Plaintiff prays for judgment to be entered jointly and severally herein against all Defendants as follows:

(a) For payment money for actual damages in the amount of $271,960.00 plus relocation costs and other related costs and fees for this lawsuit as well as treble damages pursuant to RCW 19.86;

(b) For a judgment pursuant to the provisions of the Fair Debt Collection Practices Act and Fair Credit Reporting Act for each violation and for punitive damages plus per diem adjustments and possibly Private Attorney General fees as prescribed by law to be determined at trial; *Graziano v. Harrison*, 950 F.2d 107, 113 (3d. Cir. 1991), 15 U.S.C. § 1692(a)(3), (see *Zagorski v. Midwest Services, Inc.* F.3d – (1997 WL

FIRST AMENDED VERIFIED COMPLAINT

**Deborah R. Beaton, Plaintiff**
**31431 46ᵗʰ Pl SW**
**Federal Way, WA 98023**
**(509) 499-1607**

695401, 7th Cir.) or 128 F.3d 1164 (7th Cir. 1997);

(c) For actual and statutory damages in whatever amount this Court shall find appropriate to compensate the Plaintiff for the losses she has suffered;

(d) All statutory damages to which the Plaintiff is entitled under Fair Debt Collection Practices Act, Fair Credit Reporting Act, Washington Consumer Protection Act, Usury Statute, TILA, RESPA, and any other applicable laws;

(e) For any other remedies and compensations this court deems appropriate.

Respectfully submitted this 4th day of August, 2011,

### VERIFICATION

I, the under signed Plaintiff, do affirm the foregoing First Amended Verified Complaint, the allegations therein, the pleading and contents to be true, correct, complete, to the best of my knowledge, information and belief.

Plaintiff: Deborah R. Beaton

Signature: _Deborah R. Beaton_

### JURAT

I Melissa D Wagner _____ a Notary Public certify that I know or have satisfactory evidence that Deborah R. Beaton appeared before me, and executed this First Amended Verified Complaint as her sworn statement as a free and voluntary act of her own will under penalty of perjury.

I certify under PENALTY OF PERJURY under the laws of the State of Washington, County of _Pierce_ that the foregoing paragraph is true and correct.

August 4th 2011
DATED:

_Melissa D Wagner_
Notary Public
My appointment expires 3-16-14

FIRST AMENDED VERIFIED COMPLAINT

MELISSA D WAGNER
NOTARY PUBLIC
STATE OF WASHINGTON

Deborah R. Beaton, Plaintiff
31431 46th Pl SW
Federal Way, WA 98023
(509) 499-1607



1

## EXHIBITS ATTACHED

2

3

Exhibit A – Statutory Warrantee Deed (20060906002230)

4

Exhibit B – Deed of Trust (20060906002231)

5

Exhibit C – Appointment of Successor Trustee (20101201001577)

6

7

Exhibit D – Notice of Trustee Sale (20101206000340)

8

Exhibit E – Qualified Written Request

9

Exhibit F – Credit Reporting Dispute Letter

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

FIRST AMENDED VERIFIED COMPLAINT

Deborah R. Beaton, Plaintiff
31431 46th Pl SW
Federal Way, WA 98023
(509) 499-1607

Page  12 of 12

# EXHIBIT "A" ATTACHED

# (HEREUNDER)

When recorded return to:

Ms. Deborah R. Beaton
22650 24th Avenue South
Des Moines, WA 98198



**2006090600230**
TICOR NATIONAL WD          34.00
PAGE001 OF 003
09/06/2006 15:35
KING COUNTY, WA

Filed for Record at Request of
Des Moines Escrow, Inc.
Escrow Number: 6161

**E2235058**
09/06/2006 15:33
KING COUNTY, WA
TAX                      $5,066.11
SALE                   $335,950.00    PAGE001 OF 001

TICOR
637-029-1

## Statutory Warranty Deed

③

THE GRANTOR Susan Smit, as her separate estate for and in consideration of TEN DOLLARS AND
OTHER GOOD AND VALUABLE CONSIDERATION in hand paid, conveys and warrants to Deborah R.
Beaton, an unmarried individual the following described real estate, situated in the County of King, State of
Washington

Abbreviated Legal:
Abbreviated Legal for purposes of King County Recorders Office is: Ptn NW 1/4 of NE 1/4,, Sec. 16, Twn
22N, Rg 4E

Tax Parcel Number(s): 162204-9155-06

PER LEGAL DESCRIPTION ATTACHED HERETO AND BY THIS REFERENCE INCORPORATED
HEREIN.

Dated August 29, 2006

_Susan Smit_
Susan Smit

STATE OF   Washington          }
COUNTY OF   KING                } SS:

I certify that I know or have satisfactory evidence that Susan Smit

is/are the person(s) who appeared before me, and said person(s) acknowledged that           he/she/they
signed this instrument and acknowledge it to be          his/her/their           free and voluntary act for the
uses and purposes mentioned in this instrument.

Dated:   9/5/06

_Jamie Lommen_
JAMIE LOMMEN
Notary Public in and for the State of Washington
Residing at MAPLE VALLEY
My appointment expires: 11/16/2006

LPB 10-05(G-I)
Page 1 of 1

The west 182 feet of the east 342 feet of the following described Tract:

The south half of the southwest quarter of the northwest quarter of the northeast quarter of Section 16, Township 22 north, Range 4 east, W.M., records of King County, Washington;
EXCEPT the south 140 feet thereof;
EXCEPT the north 75 feet thereof;

TOGETHER WITH the north 20 feet of the south 160 feet of the south half of the southwest quarter of the northwest quarter of the northeast quarter of Section 16, Township 22 north, Range 4 east, W.M.,
EXCEPT the east 342 feet thereof;
AND EXCEPT that portion west of the east margin of 24th Place South.



1.   AVIGATION EASEMENT AND THE TERMS AND CONDITIONS THEREOF:

      IN FAVOR OF:                      Port of Seattle, a Washington State municipal corporation
      FOR:                             Free and unobstructed use and passage of all types of aircraft
      DISCLOSED BY:
      INSTRUMENT RECORDED:              November 14, 1994
      RECORDING NUMBER:                9411140599
      AFFECTS:                         Airspace over or in the vicinity of the premises




# EXHIBIT "B" ATTACHED

# (HEREUNDER)

Return To:

WASHINGTON MUTUAL BANK   FA
2210 ENTERPRISE DR
FLORENCE, SC 29501
DOC OPS M/S FSCE 440

Assessor's Parcel or Account Number:
Abbreviated Legal Description: PTN NW 1/4 OF NE 1/4, SEC. 16, TWN 22N, RG 4E

[Include lot, block and plat or section, township and range] Full legal description located on page 3
Trustee: TICOR TITLE COMPANY

ZWA1 ——————— [Space Above This Line For Recording Data] ——————
W09

# DEED OF TRUST

3010931255-048

## DEFINITIONS
Words used in multiple sections of this document are defined below and other words are defined
in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this
document are also provided in Section 16.
(A) "Security Instrument" means this document, which is dated AUGUST 28, 2006
together with all Riders to this document.
(B) "Borrower" is DEBORAH R BEATON, AN UNMARRIED INDIVIDUAL

Borrower is the trustor under this Security Instrument.
(C) "Lender" is WASHINGTON MUTUAL BANK, FA

WASHINGTON-Single Family- Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    Form 3048 1/01

VMP®-6(WA) (0012)
Page 1 of 15                    Initials: _____
VMP MORTGAGE FORMS - (800)521-7291



Lender is a FEDERAL SAVINGS BANK
organized and existing under the laws of THE UNITED STATES OF AMERICA
Lender's address is 2273 N. GREEN VALLEY PARKWAY, SUITE 14, HENDERSON, NV
89014
Lender is the beneficiary under this Security Instrument.
(D) "Trustee" is TICOR TITLE COMPANY

(E) "Note" means the promissory note signed by Borrower and dated AUGUST 28, 2006
The Note states that Borrower owes Lender TWO HUNDRED SEVENTY ONE THOUSAND NINE
HUNDRED SIXTY AND 00/100                                                    Dollars
(U.S. $     271,960.00    ) plus interest. Borrower has promised to pay this debt in regular
Periodic Payments and to pay the debt in full not later than OCTOBER 01, 2036
(F) "Property" means the property that is described below under the heading "Transfer of Rights
in the Property."
(G) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late
charges due under the Note, and all sums due under this Security Instrument, plus interest.
(H) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The
following Riders are to be executed by Borrower [check box as applicable]:

| ☐ Adjustable Rate Rider | ☐ Condominium Rider | ☐ Second Home Rider |
| ☐ Balloon Rider | ☐ Planned Unit Development Rider | ☐ 1-4 Family Rider |
| ☐ VA Rider | ☐ Biweekly Payment Rider | ☐ Other(s) [specify] |

(I) "Applicable Law" means all controlling applicable federal, state and local statutes,
regulations, ordinances and administrative rules and orders (that have the effect of law) as well as
all applicable final, non-appealable judicial opinions.
(J) "Community Association Dues, Fees, and Assessments" means all dues, fees,
assessments and other charges that are imposed on Borrower or the Property by a condominium
association, homeowners association or similar organization.
(K) "Electronic Funds Transfer" means any transfer of funds, other than a transaction
originated by check, draft, or similar paper instrument, which is initiated through an electronic
terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize
a financial institution to debit or credit an account. Such term includes, but is not limited to,
point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire
transfers, and automated clearinghouse transfers.
(L) "Escrow Items" means those items that are described in Section 3.
(M) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or
proceeds paid by any third party (other than insurance proceeds paid under the coverages
described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or
other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv)
misrepresentations of, or omissions as to, the value and/or condition of the Property.
(N) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or
default on, the Loan.
(O) "Periodic Payment" means the regularly scheduled amount due for (i) principal and
interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.
(P) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.)
and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended
from time to time, or any additional or successor legislation or regulation that governs the same
subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and

restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(Q) "Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the COUNTY of KING :

                [Type of Recording Jurisdiction]             [Name of Recording Jurisdiction]

    THE LEGAL DESCRIPTION IS ATTACHED HERETO AS A SEPARATE EXHIBIT AND IS MADE A PART HEREOF.

Parcel ID Number:                             which currently has the address of

22650 24TH AVE S                                        [Street]

DES MOINES                [City], Washington 98198     [Zip Code]

("Property Address"):

    TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

    BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

    THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

    UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

    **1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the

Initials: _DRB_

-6(WA) (0012)                       Page 3 of 15                          **Form 3048 1/01**

Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the

term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was

required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. **Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. **Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and

Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) **Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

(b) **Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.**

11. **Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair

market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

Initials: DB

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

15. **Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

16. **Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

17. **Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

18. **Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

Initials: ___

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property.

Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property at public auction at a date not less than 120 days in the future. The notice shall further inform Borrower of the right to reinstate after acceleration, the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale, and any other matters required to be included in the notice by Applicable Law. If the default is not cured on or before the date specified in the notice, Lender at its option, may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and/or any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall give written notice to Trustee of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee and Lender shall take such action regarding notice of sale and shall give such notices to Borrower and to other persons as Applicable Law may require. After the time required by Applicable Law and after publication of the notice of sale, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of the Property for a period or periods permitted by Applicable Law by public announcement at the time and place fixed in the notice of sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it or to the clerk of the superior court of the county in which the sale took place.

ZWA2

**23. Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Such person or persons shall pay any recordation costs and the Trustee's fee for preparing the reconveyance.

**24. Substitute Trustee.** In accordance with Applicable Law, Lender may from time to time appoint a successor trustee to any Trustee appointed hereunder who has ceased to act. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by Applicable Law.

**25. Use of Property.** The Property is not used principally for agricultural purposes.

**26. Attorneys' Fees.** Lender shall be entitled to recover its reasonable attorneys' fees and costs in any action or proceeding to construe or enforce any term of this Security Instrument. The term "attorneys' fees," whenever used in this Security Instrument, shall include without limitation attorneys' fees incurred by Lender in any bankruptcy proceeding or on appeal.

**ORAL AGREEMENTS OR ORAL COMMITMENTS TO LOAN MONEY, EXTEND CREDIT, OR TO FORBEAR FROM ENFORCING REPAYMENT OF A DEBT ARE NOT ENFORCEABLE UNDER WASHINGTON LAW.**

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____

_____ (Seal)
                                              -Borrower

**DEBORAH R BEATON**

_____

_____ (Seal)
                                              -Borrower

_____ (Seal)    _____ (Seal)
                  -Borrower                                     -Borrower

_____ (Seal)    _____ (Seal)
                  -Borrower                                     -Borrower

_____ (Seal)    _____ (Seal)
                  -Borrower                                     -Borrower

**STATE OF WASHINGTON**
County of    KING                                                           } ss:
    On this day personally appeared before me    DEBORAH R BEATON

to me known to be the individual(s) described in and who executed the within and foregoing instrument, and acknowledged that he/she/they signed the same as his/her/their free and voluntary act and deed, for the uses and purposes therein mentioned.
    GIVEN under my hand and official seal this                     day of

_____
Notary Public in and for the State of Washington, residing at

My Appointment Expires on

-6(WA)  (0012)                         Page 15 of 15                 Initials: ____          Form 3048 1/01

LGLD

LEGAL DESCRIPTION

3010931255-048

THE LEGAL DESCRIPTION IS ATTACHED HERETO AS A SEPARATE
EXHIBIT AND IS MADE A PART HEREOF.

# EXHIBIT "C" ATTACHED

# (HEREUNDER)

**Electronically Recorded**
**20101201001577**

NORTHWEST TITLE     AST     14.00
Page 001 of 001
12/01/2010 04:15
King County, WA

After Recording Return to:
Vonnie McElligott
Northwest Trustee Services, Inc.
P.O. Box 997
Bellevue, WA 98009-0997

---

## Appointment of Successor Trustee

File No. 7763.28416

    Deborah R. Beaton, an unmarried individual is/are the grantor(s), Ticor Title Company is the trustee and Washington Mutual Bank, F.A. is the beneficiary under that certain deed of trust dated 08/28/06 and recorded on 09/06/06 under King County, Washington Auditor's File No. 20060906002231.

    The present beneficiary under said deed of trust appoints Northwest Trustee Services, Inc., a Washington corporation, whose address is P.O. Box 997, Bellevue, WA 98009-0997, as successor trustee under the deed of trust with all powers of the original trustee.

JPMorgan Chase Bank, N.A. successor in interest to
Washington Mutual Bank fka Washington Mutual Bank, FA

By _____

Ediba Trivuncic     Foreclosure Officer

STATE OF ____Florida____ )
                            )ss.
COUNTY OF ____Duval____ )

    I certify that I know or have satisfactory evidence that ____Ediba Trivuncic____ is the person who appeared before me, and said person acknowledged that (he/she) signed this instrument, on oath stated that (he/she) was authorized to execute the instrument and acknowledged it as the ____Foreclosure Officer____ of JP Morgan Chase Bank, National Association to be the free and voluntary act of such party for the uses and purposes mentioned in the instrument.

    Dated: __11/29/2010__

Notary Public in and for the State of ____Florida____
Residing at ____Jacksonville____
My appointment expires _____

NORTHWEST TRUSTEE SERVICES, INC.
P.O. BOX 997
BELLEVUE, WA 98009-0997
425-586-1900     FAX 425-586-1997

Client:     JPMorgan Chase Bank, National Association
Borrower: Beaton, Deborah R.



DEBORAH A. MCNULTY
Notary Public - State of Florida
My Comm. Expires Jan 30, 2011
Commission # DD 851452
Bonded Through National Notary Assn.

# EXHIBIT "D" ATTACHED
# (HEREUNDER)

**Electronically Recorded**
**20101216000340**

NORTHWEST TITLE    NTS      65.00
Page 001 of 004
12/16/2010 12:03
King County, WA

After Recording, Return to:
Vonnie McElligott
Northwest Trustee Services, INC.
P.O. Box 997
Bellevue, WA 98009-0997

File No.:    7763.28416
Grantors:    Northwest Trustee Services, Inc.
            JPMorgan Chase Bank, N.A. successor in interest to Washington Mutual Bank
            fka Washington Mutual Bank, FA
Grantee:    Deborah R. Beaton, as her separate estate
Ref to DOT Auditor File No.: 20060906002231
Tax Parcel ID No.: 162204-9155-06
Abbreviated Legal:  PTN NW ¼ NE ¼ SECTION 16, TWP 22 NORTH, RANGE 4 EAST. W.M.

### Notice of Trustee's Sale
Pursuant to the Revised Code of Washington 61.24, et seq.

I.

On March 18, 2011, at 10:00 a.m. The northwest corner of the ground level parking area located under the Pacific Corporate Center building, 13555 SE 36th Street in the City of Bellevue, State of Washington, the undersigned Trustee (subject to any conditions imposed by the Trustee) will sell at public auction to the highest and best bidder, payable at time of sale, the following described real property "Property", situated in the County(ies) of King, State of Washington:

    The West 182 feet of the East 342 feet of the following described Tract: the South half of the
    Southwest Quarter of the Northwest Quarter of the Northeast Quarter of Section 16, Township 22
    North, Range 4 East, W.M., Records of King County, Washington; except the South 140 feet
    thereof; except the North 75 feet thereof; together with the North 20 feet of the South 160 feet of
    the South half of the Southwest Quarter of the Northwest Quarter of the Northeast Quarter of
    Section 16, Township 22 North, Range 4 East, W.M., except the East 342 feet thereof; and except
    that portion West of the East margin of 24th Place South.

    Commonly known as:    22650 24th Avenue South
                          Des Moines, WA  98198

which is subject to that certain Deed of Trust dated 08/28/06, recorded on 09/06/06, under Auditor's File No. 20060906002231, records of King County, Washington, from Deborah R. Beaton, an unmarried individual, as Grantor, to Ticor Title Company, as Trustee, to secure an obligation "Obligation" in favor of Washington Mutual Bank, F.A. nka JPMorgan Chase Bank, N.A. successor in interest to Washington Mutual Bank fka Washington Mutual Bank, FA, as Beneficiary.

*The Tax Parcel ID number and Abbreviated Legal Description are provided solely to comply with the recording statutes and are not intended to supplement, amend or supersede the Property's full legal description provided herein.

II.

No action commenced by the Beneficiary of the Deed of Trust is now pending to seek satisfaction of the Obligation in any Court by reason of the Grantor's or Borrower's default on the Obligation.

III.

The Beneficiary alleges default of the Deed of Trust for failure to pay the following amounts now in arrears and/or other defaults:

|  |  | Amount due to reinstate by 12/16/2010 |
|---|---|---|
| Monthly Payments |  | $12,952.14 |
| Late Charges |  | $522.42 |
| Lender's Fees & Costs |  | $14.00 |
| Total Arrearage | $13,488.56 |  |
| Trustee's Expenses (Itemization) |  |  |
| Trustee's Fee |  | $725.00 |
| Title Report |  | $995.36 |
| Statutory Mailings |  | $27.36 |
| Recording Costs |  | $14.00 |
| Postings |  | $70.00 |
| Sale Costs |  | $0.00 |
| Total Costs | $1,831.72 |  |
| Total Amount Due: |  | $15,320.28 |

Other known defaults as follows:

IV.

The sum owing on the Obligation is:  Principal Balance of $259,655.39, together with interest as provided in the note or other instrument evidencing the Obligation from 06/01/10, and such other costs and fees as are due under the Obligation, and as are provided by statute.

V.

The Property will be sold to satisfy the expense of sale and the Obligation as provided by statute.  The sale will be made without representation or warranty, express or implied regarding title, possession, encumbrances or condition of the Property on March 18, 2011.  The default(s) referred to in paragraph III, together with any subsequent payments, late charges, advances costs and fees thereafter due, must be cured by 03/07/11 (11 days before the sale date), to cause a discontinuance of the sale.  The sale will be discontinued and terminated if at any time before the close of the Trustee's business on 03/07/11 (11 days before the sale date), the default(s) as set forth in paragraph III, together with any subsequent payments, late charges, advances, costs and fees thereafter due, is/are cured and the Trustee's fees and costs are paid.

The sale may be terminated any time after 03/07/11 (11 days before the sale date), and before the sale by the Borrower, Grantor, any Guarantor or the holder of any recorded junior lien or encumbrance paying the entire balance of principal and interest secured by the Deed of Trust, plus costs, fees, and advances, if any made pursuant to the terms of the obligation and/or Deed of Trust.

VI.

A written notice of default was transmitted by the Beneficiary or Trustee to the Borrower and Grantor at the following address(es):

NAME AND ADDRESS

Deborah R. Beaton
22650 24th Avenue South
Des Moines, WA 98198

Unknown Spouse and/or Domestic Partner
of Deborah R. Beaton
22650 24th Avenue South
Des Moines, WA 98198

Deborah R. Beaton
22650 24th Place
Des Moines, WA 98198

Unknown Spouse and/or Domestic Partner
of Deborah R. Beaton
22650 24th Place
Des Moines, WA 98198

by both first class and either certified mail, return receipt requested on 11/15/10, proof of which is in the possession of the Trustee; and on 11/15/10 Grantor and Borrower were personally served with said written notice of default or the written notice of default was posted on a conspicuous place on the real property described in paragraph I above, and the Trustee has possession of proof of such service or posting.

VII.

The Trustee, whose name and address are set forth below, will provide in writing to anyone requesting it a statement of all foreclosure costs and trustee's fees due at any time prior to the sale.

VIII.

The effect of the sale will be to deprive the Grantor and all those who hold by, through or under the Grantor of all their right, title and interest in the Property.

IX.

Anyone having any objection to the sale on any grounds whatsoever will be afforded an opportunity to be heard as to those objections if they bring a lawsuit to restrain the sale pursuant to RCW 61.24.130. Failure to bring such a lawsuit may result in a waiver of any proper grounds for invalidating the Trustee's sale.

X.

NOTICE TO OCCUPANTS OR TENANTS - The purchaser at the Trustee's Sale is entitled to possession of the property on the 20th day following the sale, as against the Grantor under the Deed of Trust (the owner) and anyone having an interest junior to the deed of trust, including occupants who are not tenants. After the 20th day following the sale the purchaser has the right to evict occupants who are not tenants by summary proceedings under Chapter 59.12 RCW. For tenant-occupied property, the purchaser shall provide a tenant with written notice in accordance with RCW 61.24.060.

The trustee's rules of auction may be accessed at www.northwesttrustee.com and are incorporated by this reference.  You may also access sale status at www.northwesttrustee.com and www.USA-Foreclosure.com.

EFFECTIVE:  12/16/2010

Northwest Trustee Services, Inc., Trustee

By _____
Authorized Signature
P.O. BOX 997
Bellevue, WA 98009-0997
Contact:  Vonnie McElligott
(425) 586-1900

STATE OF WASHINGTON    )
                       ) ss.
COUNTY OF KING         )

I certify that I know or have satisfactory evidence that _____ is the person who appeared before me, and said person acknowledged that (he/she) signed this instrument, on oath stated that (he/she) was authorized to execute the instrument and acknowledged it as the Assistant Vice President of Northwest Trustee Services, Inc. to be the free and voluntary act of such party for the uses and purposes mentioned in the instrument.

Dated:

RHEA S. PRE
STATE OF WASHINGTON
NOTARY PUBLIC
MY COMMISSION EXPIRES
04-22-14

NOTARY PUBLIC in and for the State of Washington, residing at _____
My commission expires _____

NORTHWEST TRUSTEE SERVICES, INC., SUCCESSOR BY MERGER TO NORTHWEST TRUSTEE SERVICES PLLC FKA NORTHWEST TRUSTEE SERVICES, LLC, P.O. BOX 997,        BELLEVUE, WA 98009-0997
PHONE  (425) 586-1900 FAX (425) 586-1997

File No: 7763.28416
Client: JPMorgan Chase Bank, National Association
Borrower:  Beaton, Deborah R.

SERVING WA, OR, ID, CA, NV, AZ, MT, HI

This is an attempt to collect a debt and any information obtained will be used for that purpose.

# EXHIBIT "E" ATTACHED

# (HEREUNDER)

# RESPA And TILA Request

From:
Deborah R. Beaton
31431 46th Pl Sw
Federal Way, WA 98023

Date: 02/06/2011

NORTHWEST TRUSTEE SERVICES, INC.
P.O. BOX 997
BELLEVUE, WA. 98009-0997

# QUALIFIED WRITTEN REQUEST
## COMPLAINT, DISPUTE OF DEBT,
### DEMAND FOR VALIDATION OF DEBT AND TILA REQUEST

This letter is a "qualified written request" in compliance with and under the Real Estate Settlement Procedures Act, 12 U.S.C. Section 2605 (e). This demand is for the complete accounting detail of account number # 3010931255-048

(hereinafter the subject loan and is the reference for all question and requests described below).

Dear Sir or Madam:

I are writing to you to complain about the accounting and servicing of this mortgage account number # 3010931255-048 our need for understanding and clarification of various sale, transfer, funding source, legal and beneficial ownership, charges, credits, debits, transactions, reversals, actions, payments, analysis and records related to the servicing of this account from its origination to the present date.

To date, the documents and information I have, that you have sent and the conversations with your service representatives have been unproductive and have not answered our questions.

Needless to say, I am very concerned. With all the news lately regarding the stories of predatory lending, you have left us feeling that there is something you are trying to hide. I am concerned that potential fraudulent and deceptive practices by unscrupulous mortgage brokers; sales and transfers of mortgage servicing rights; deceptive and fraudulent servicing practices to enhance balance sheets; deceptive, abusive and fraudulent accounting tricks and practices may have also negatively affected any credit rating, mortgage account and/or the debt or payments that I are currently, or may be legally obligated to.

I hereby demand absolute 1st hand evidence from you of the original or certified security

regarding account # 3010931255-048.

In the event you do not supply us with the security instrument, it will be a positive confirmation on your part that you never really created and owned one.

I hereby demand that a chain of transfer from you to wherever the security is now be promptly sent to us as well. Absent the actual evidence of the security I have no choice but to dispute the validity of your lawful ownership, funding, entitlement right, and the current debt you say I owe. By debt I are referring to the principal balance you claim I owe; the calculated monthly payment, calculated escrow payment and any fees claimed to be owed by you or any trust or entity you may service or sub-service for.

To independently validate this debt, I need to conduct a complete exam, audit, review and accounting of this mortgage account from its inception through the present date. Upon receipt of this letter, please refrain from reporting any negative credit information (if any) to any credit reporting agency until you respond to each of the requests.

I also request that you conduct your own investigation and audit of this account since its inception to validate the debt you currently claim I owe. I would like you to validate the debt so that it is accurate to the penny!

Please do not rely on previous servicing companies or originators records, assurances or indemnity agreements and refuse to conduct a full audit and investigation of this account.

I understand that potential abuses by you or previous servicing companies could have deceptively, wrongfully, unlawfully, and/or illegally: Increased the amounts of monthly payments; Increased the principal balance I owe: Increased the escrow payments; Increased the amounts applied and attributed toward interest on this account; Decreased the proper amounts applied and attributed toward the principal on this account; and/or Assessed, charged and/or collected fees, expenses and miscellaneous charges I are not legally obligated to pay under this mortgage, note and/or deed of trust.

I request you insure that I have not been victim of such predatory servicing and lending practices.

To insure this, I have authorized a thorough review, examination, accounting and audit of mortgage account # 3010931255-048 mortgage auditing and predatory servicing or lending experts. This exam and audit will review this mortgage account file from the date of initial contact, application and the origination of this account to the present date written above.

**Again, this is a Qualified Written Request under the Real Estate Settlement Procedures Act, codified as Title 12 section 2605(e) of the United States Code as well as a request under the Truth In Lending Act 15 U.S.C. section 1601. RESPA provides substantial penalties and fines for non-compliance or failure to answer my question provided in this letter within sixty (60) days of its receipt.**

In order to conduct the examination and audit of this loan provide full and immediate disclosure

including copies of all pertinent information regarding this loan.

The documents requested and answers to the questions are needed to ensure that this loan:

1-Was originated in lawful compliance with all federal and state laws, regulations including, but not limited to RESPA, TILA, Fair Debt Collection Practices Act, HOEPA and other laws.

2-That the origination and/or any sale or transfer of this account or monetary instrument, was conducted in accordance with proper laws and was a lawful sale with complete disclosure to all parties with an interest.

3-That you disclose the claimed holder in due course of the monetary instrument/deed of trust/asset is holding such note in compliance with statutes, State and Federal laws and is entitled to the benefits of payments;

4-That all good faith and reasonable disclosures of transfers, sales, Power of Attorney, monetary instrument ownership, entitlements, full disclosure, of actual funding source, terms, costs, commissions, rebates, kickbacks, fees etc. were and still are properly disclosed including but not limited to the period commencing with the original loan solicitation through and including any parties, instruments, assignments, letters of transmittal, certificates of asset backed securities and any subsequent transfer thereof;

5-That each servicer and/or sub-servicer of this mortgage has serviced this mortgage in accordance with statute, laws and the terms of mortgage, monetary instrument/deed of trust, including but not limited to all accounting or bookkeeping entries commencing with the original loan solicitation through and including any parties, instruments, assignments, letters of transmittal, certificates of asset backed securities and any subsequent transfer thereof;

6-That each servicer and/or sub-servicer of this mortgage has serviced this mortgage in compliance with local, state and federal statutes, laws and regulations commencing with the original loan solicitation through and including any parties, instruments, assignments, letters of transmittal, certificates o asset backed securities and any subsequent transfer thereof;

7-That this mortgage account has been credited, debited, and adjusted, amortized and charged correctly and disclosed fully commencing with the original loan solicitation through and including any parties, instruments, assignments, letters of transmittal, certificates of asset back securities and any subsequent transfer thereof;

8-That interest and principal have been properly calculated and applied to this loan;

9-That any principal balance has been properly calculated, amortized and accounted for;

10-That has no charges, fees or expenses, not obligated in any agreement, have been charged, assessed or collected from this account or any other related account arising out of the subject loan transaction.

In order to validate this debt and audit this account needed are copies of pertinent documents to be provided.

Also needed are answers, certified, in writing, to various servicing questions. For each record kept on computer or in any other electronic file or format, please provide a copy of all information in each field or record in each computer system, program or database used that contains any information on this account.

As such, please send to the address above, copies of the documents requested below as soon as possible.

Please also provide copies, front and back, of the following documents regarding account # 3010931255-048.

1-Any certificated or non-certificated security used for the funding of this account;

2-Any and all "Pool Agreement(s)" or "servicing agreement(s)" between the nominal lender at the loan closing and any party or parties who could claim an interest in the loan closing or documents pertaining thereto and any government sponsored entity, hereinafter "GSE or other party";

3-Any and all "Deposit Agreement(s)" between the nominal lender at the loan closing and any party or parties who could claim an interest in the loan closing or documents pertaining thereto and any GSE or other party;

4-Any and all "Servicing Agreement(s)" between nominal lender at the loan closing and any party or parties who could claim an interest in the loan closing or documents pertaining thereto and any GSE or other party;

5-Any and all "Custodial Agreement(s)" between the nominal lender at the loan closing and any party or parties who could claim an interest in the loan closing or documents pertaining thereto and any GSE or other party;

6-Any and all "Master Purchasing Agreement(s)" between the nominal lender at the loan closing and any party or parties who could claim an interest in the loan closing or documents pertaining thereto and any GSE or other party;

7-Any and all "Issuer Agreement(s)" between the nominal lender at the loan closing and any party or parties who could claim an interest in the loan closing or documents pertaining thereto and any GSE or other party;

8-Any and all "Commitment to Guarantee" agreement(s) between the nominal lender at the loan closing and any party or parties who could claim an interest in the loan closing or documents pertaining thereto and any GSE or other party;

9-Any and all "Release of Document" agreement(s) between the nominal lender at the loan closing and any party or parties who could claim an interest in the loan closing or documents pertaining thereto and any GSE or other party;

10-Any and all "Master Agreement for Servicer's Principal and Interest Custodial Account" between the nominal lender at the loan closing and any party or parties who could claim an interest in the loan closing or documents pertaining thereto and any GSE or other party;

11-Any and all "Servicer's Escrow Custodial Account" between the nominal lender at the loan closing and any party or parties who could claim an interest in the loan closing or documents pertaining thereto and any GSE or other party;

12-Any and all "Release of Interest" agreement(s) between the nominal lender at the loan closing and any party or parties who could claim an interest in the loan closing or documents pertaining thereto and any GSE or other party;

13-Any Trustee agreement(s) between the nominal lender at the loan closing and any party or parties who could claim an interest in the loan closing or documents pertaining thereto and any GSE or other party;

**Please also send copies, front and back, of:**

1-Any documentation evidencing any trust relationship regarding the Mortgage/Deed of Trust and any Note in this matter;

2-Any and all document(s) establishing any Trustee of record for the Mortgage/Deed of trust and Note;

3-Any and all documents(s) establishing the date of any appointment of Trustee Mortgage/Deed of Trust and any Note; including any and all assignments or transfers of nominees of any substitute trustee(s);

4-Any and all document(s) establishing any Grantor for this Mortgage/Deed of Trust and any Note;

5-Any and all document(s) establishing any Grantee for this Mortgage/Deed of Trust and any Note;

6-Any and all document(s) establishing any Beneficiary for this Mortgage/Deed of Trust and any Note;

7-Any documentation evidencing the Mortgage/Deed Trust is not a constructive trust or any other form of trust;

8-All data, information, notations, text, figures and information contained in your mortgage servicing and accounting computer systems including, but not limited to All-tel or Fidelity CPI system, or any other similar mortgage servicing software used, any servicer, or subsystem servicer(s) of this mortgage account from the inception of this account to the date written above.

9-All descriptions and legends of all Codes used in your mortgage servicing and accounting system so the examiners and auditors and experts retained to audit and review this mortgage account may properly conduct their work.

10-All assignments, transfers, alonges, or other documents evidencing a transfer, sale or assignment of this mortgage, deed of trust, monetary instrument or other documents that secures payment to this obligation in this account from their inception of this account to the present date

including any such assignments on MERS.

11-All records, electronic or otherwise, of assignments of this mortgage, monetary instrument or servicing rights to this mortgage including any such assignments on MERS.

12-All deeds in lieu, modifications to this mortgage, monetary instrument or deed of trust from the inception of this account to the present date.

13-The front and back of each and every canceled check, money order, draft, debit or credit notice issued to any servicer(s) of this account for payment of any monthly payment, other payment, escrow charge, fee or expense on this account.

14-All escrow analysis conducted on this account from the inception of this account until the date of this letter.

15-The front and back of each and every canceled check, draft, or debit notice issued for payment of closing costs, fees and expenses listed on any and all disclosure statements including, but not limited to, appraisal fees, inspections fees, title searches, title insurance fees, credit life insurance premiums, hazard insurance premiums, commissions, attorney fees, points, etc.

16-Front and back copies of all payment receipts, checks, money orders, drafts, automatic debits and written evidence of payments made by others on this account.

17-All letters, statements and documents sent by your company.

18-All letters, statements and documents sent to agents, attorneys or representatives of your company.

19-All letters, statements and documents sent by previous servicers, sub-servicers or others in your account file or in your control or possession or in the control or possession of any affiliate, parent company, agent, sub-servicers, servicers, attorney or other representative of your company.

20-All letters, statements and documents contained in this account file or imaged by you, any servicers or sub-servicers of this mortgage from the inception of this account to the present date.

21-All electronic transfers, assignments and sales of the note/asset, mortgage, deed of trust or other security instrument.

22-All copies of property inspection reports, appraisals, BPOs and reports done on this property.

23-All invoices for each charge such as inspection fees, BPOs, appraisal fees, attorney fees, insurance, taxes, assessments or any expense which has been charged to this mortgage account from the inception of this account to the present date.

24-All checks used to pay invoices for each charge such as inspection fees, BPOs, appraisal fees, attorney fees, insurance, taxes, assessments or any expense which has been charged to this account from the inspection of this account to the present date.

25-All agreements, contracts and understandings with vendors that have been paid for any charge on this account from the inception of this account to the present date.

26-All account servicing records, payment payoffs, payoff calculations, ARM audits, interest rate adjustments, payment records, transaction histories, account histories, accounting records, ledgers, and documents that relate to the accounting of this account from the inception of this account to the present date.

27-All account servicing transaction records, ledgers, registers and similar items detailing how this account has been serviced from the inception of this account to the present date.

Further, in order to conduct the audit and review of this account, and to determine all proper amounts due. The following answers to question concerning the servicing and accounting of this mortgage account from its inception to the present date. Accordingly, please provide, in writing, the answers to the following questions:

**In regards to Account Accounting and Servicing Systems:**

1-Please identify each account accounting and servicing system used by you and any subservicers or previous servicers from the inception of this account to the present date so that experts can decipher the data provided.

2-For each account accounting and servicing system identified by you and any sub-servicers or previous servicers from the inception of this account to the present date, please provide the name and address of the company that designed and sold the system.

3-For each accounting and servicing system used by you and any sub-servicers or previous servicers from the inception of this account to the present date, please provide the complete transaction code list for each system to adequately audit this account.

**In regards to Debits and Credits:**

1-In a spreadsheet form or in letter form in a columnar format, please detail each and every credit on this account from the date such credit was posted to this account as well as the date any credit was received.

2-In a spreadsheet form or in letter form in a columnar format, please detail each and every debit on this account from the date such debit was posted to this account as well as the date any debit was received.

3-For each debit and credit listed, please provide me with the definition for each corresponding transaction code you utilize.

4-For each transaction code, provide the master transaction code list used by you or previous servicer(s).

**In regards to Mortgage and Assignments:**

1-Has each sale, transfer or assignment of this mortgage, monetary instrument, deed of trust or any other instrument executed to secure this debt been recorded in the county property records in the count and state in which the property is located from the inception of this account to the present date? Yes or No?

2-If not, why?

3-Is your company the servicer of this mortgage account or the holder in due course and beneficial owner of this mortgage, monetary instrument and/or deed of trust?

4-Have any sales, transfers or assignments of this mortgage, monetary instrument, deed of trust or any other instrument executed to secure this debt been recorded in any electronic fashion such as MERS or other internal or external recording system from the inception of this account to the date? Yes or No?

5-If yes, please detail the names of the seller, purchaser, assignor, assignee or any holder in due course to any right or obligation of any note, mortgage, deed of trust or security instrument executed securing the obligation on this account that was not recorded in the county records where the property is located whether they be mortgage servicing right or the beneficial interest in the principal and interest payments.

**In regards to Attorney Fees:**

For purposes of the question below dealing with attorney fees, please consider attorney fees and legal fees to be one in the same.

1-Have attorney fees ever been assessed to this account from the inception of this account to the present date? Yes or No?

2-If yes, please detail each separate assessment, charge and collection of attorney fees to this account from the inception of this account to the present date and the date of such assessments to this account.

3-Have attorney fees ever been charged to this account from the inception of this account to the present date? Yes or No?

4-If yes, please detail each separate charge of attorney fees to this account from the inception of this account to the present date and the date of such assessments to this account.

5-Have attorney fees ever been collected from this account from the inception of this account to the present date? Yes or No?

6-If yes, please detail each separate collection of attorney fees to this account from the inception of this account to the present date and the date of such assessments to this account.

7-Please provide the name and address of each attorney or law firm that has been paid any fees or expenses related to this account from the inception of this account to the present date.

8-Please identify in writing the provision, paragraph, section or sentence of any note, mortgage, deed of trust or any agreement signed that authorized the assessment, charge or collection of attorney fees.

9-Please detail and list in the writing each separate attorney fee assessed form this account and for which each corresponding payment period or month such fee was assessed from the inception of this account to the present date.

10-Please detail and list in writing each separate attorney fee collected from this account and for which each corresponding payment period or month such fee was collected from the inception of this account to the present date.

11-Please detail and list in writing any adjustments in attorney fees assessed and on what date such adjustment was made and the reason for such adjustment.

12-Please detail and list in writing any adjustments in attorney fees collected and on what date such adjustment was made the reason for such adjustment.

13-has interest been charged on any attorney fees assessed or charged to this account? Yes or No?

14-Is interest allowed to be assessed or charged on attorney fees charged or to this account? Yes or No?

15-How much total in attorney fees have been assessed to this account from the inception to the date?

16-How much total in attorney fees have been collected from this account from the inception to the present date?

17-How much total in attorney fees have been charged to this account from the inception to the present date?

18-Please send copies of all invoices and detailed billing statements from any law firm or attorney that has billed such fees that have been assessed or collected from this account from the inception to the present date.

**In regards to Suspense/Unapplied Accounts:**

For this section, please treat the term suspense account and unapplied account as one in the same.

1-Has there been any suspense or unapplied account transactions on this account from the inception of this account until the present date? Yes or No?

2-If yes, please explain the reason for each and every suspense transaction that occurred on this account. If no, please skip the questions in this section dealing with suspense and unapplied accounts.

3-In a spreadsheet or in letter form in a columnar format, please detail for me each and every

suspense or applied transaction, both debits and credit that has occurred on this account from the inception of this account to the present date.

**In regards to late fees:**

For purposes of my questions below dealing with late fees, please consider the terms late fees and late charges to be one in the same.

1-Have you reported the collection of late fees on this account as interest in any statement or to the IRS? Yes or No?

2-Has any previous servicers or sub-servicers of this mortgage reported the collection of late fees on this account as interest in any statement to the IRS? Yes or No?

3-Do you consider the payment of late fees as liquidated damages to you for not receiving payment on time? Yes or No?

4-Are late fees considered interest? Yes or No?

5-Please detail in writing what expenses and damages incurred for any payment made that was late.

6. Were any of these expenses or damages charged or assessed to this account in any other way? Yes or No?

7-If yes, please describe what expenses or damages were charged or assessed to this account.

8-Please describe in writing what expenses you or others undertook due to any payment which was late.

9-Please describe in writing what damages you or others undertook due to any payment which was late.

10-Please identify in writing the provision, paragraph, section or sentence of any note, mortgage, deed of trust or any agreement signed that authorized the assessment or collection of late fees.

11-Please detail and list in writing each separate late fee assessed to this account and for which corresponding payment period or month such late fee was assessed from the inception of this account to the present date.

12-Please detail and list in writing each separate late fee collected from this account and for which corresponding payment period or month such late fee was collected from the inception of this account to the present date.

13-Please detail and list in writing any adjustments in late fees assessed and on what date such adjustment was made and the reason for such adjustment.

14-Has interest been charged on any late fee assessed or charged to this account? Yes or No?

15-Is interest allowed to be assessed or charged on late fees to this account? Yes or No?

16-Have any late charges been assessed to this account? Yes or No?

17-If yes, how much in total late charges have been assessed to this account from the inception of this account to the present date?

18-Please provide the exact months or payment dates you or other previous servicers or sub-servicers of this account claim to have late payments from the inception of this account to the present date.

19-Have late charges been collected on this account from the inception to the present date? Yes or No?

20-If yes, how much in total late charges have been collected on this account from the inception of this account to the present date?

**In regards to Property Inspections:**

For the purpose of this section property inspection and inspection fee refer to any inspection of property by any source and any related fee or expense charged, assessed or collected for such inspection.

1-Have any property inspections been conducted on the property from the inception of this account to the present date? Yes or No?

2-If your answer is no, you can skip the rest of the question in this section concerning property inspections

3-If yes, please tell the date of each property inspection conducted on the property that is the secured interest for this mortgage, deed of trust or note.

4-Please tell the price charged for each property inspection.

5-Please tell the date of each property inspection.

6-Please tell the name and address of each company and person who conducted each property inspection on the property.

7-Please tell why the property inspections were conducted on the property.

8-Please tell how property inspections are beneficial.

9-Please tell how property inspections are protective of the property.

10-Please explain your policy on property inspections.

11-Do you consider the payment of inspection fees as a cost of collection? Yes or No?

12-If yes, why?

13-Do you use property inspections to collect debts? Yes or No?

14-Have you used any portion of the property inspection process on the property to collect debt? Yes or No?

15-If yes, please answer when and why?

16-Please identify in writing the provision, paragraph, section or sentence of any note, mortgage, deed of trust or any agreement signed that authorized the assessment or collection of property inspection fees.

17-Have you labeled in any record or document sent a property inspection as a miscellaneous advance? Yes or No?

18-If yes, why?

19-Have you labeled in any record or document sent a property inspection as a legal fee or attorney fee? Yes or No?

20-If yes, why?

21-Please detail and list in writing each separate inspection fee assessed to this account and for which corresponding payment period or month such fee was assessed from the inception of this account to the present date.

22-Please detail and list in writing each separate inspection fee collected from this account and for which corresponding payment period or month such fee was collected from the inception of this account to the present date.

23-Please detail and list in writing any adjustments in inspection fees assessed on what date such adjustment was made and the reasons for such adjustment?

24-Please detail and list in writing any adjustments in inspection fees collected an on what date such adjustment was made and the reasons for such adjustment?

25-Has interest been charged on any inspection fees assessed or charged to this account? Yes or No?

26-If yes, when and how much was charged?

27-Is interest allowed to be charged on inspection fees charged or assessed to this account? Yes or No?

28-How much total in inspection fees has been assessed to this account from the inception of this account to the present date?

29-How much total in inspection fees has been collected on this account from the inception of this

account to the present date?

30-Please forward copies of all property inspections made on the property in this mortgage account file.

31-Have any fees charged or for property inspections been placed into an escrow account? Yes or No?

**In regards to BPO Fees:**

1-Have any BPOs (Broker Price Opinions) been conducted on the property? Yes or No?

2-If your answer is no, you can skip the rest of the questions of this section concerning BPOs.

3-If yes, please provide the date of each BPO conducted on the property that is the secured interest for this mortgage, deed of trust or note.

4-Please provide the price of each BPO.

5-Please tell who conducted the BPO.

6-Please tell why the BPOs were conducted on the property.

7-Please tell how BPOs are beneficial.

8-Please tell how BPOs are protective of the property.

9-Please explain your policy on BPOs.

10-Have any BPO fees been assessed to this account? Yes or No?

11-If yes, how much in total BPO fees have been charged to this account?

12-Please identify in writing the provision, paragraph, section or sentence of any note, mortgage, deed of trust or any agreement signed that authorized the assessment, charge or collection of a BPO fee.

13-Please send copies of all BPO reports that have been done on the property.

14-Has any fee charged or assessed for a BPO been placed into an escrow account? Yes or No?

**In regards to Force-Placed Insurance:**

1-Have you placed or ordered any force-placed insurance policies on the property?

2-If yes, please provide the date of each policy ordered or placed on the property that is the secure interest for this mortgage, deed of trust or note.

3-Please provide the price of each policy.

4-Please provide the agent for each policy.

5-Please explain why each policy was placed on the property.

6-Please explain how the policies are beneficial.

7-Please explain how the policies are protective to my property.

8-Please explain your policy on force-placed insurance.

9-Have you force-placed insurance fees been assessed to this account? Yes or No?

10-If yes, how much in total force-placed insurance fees have been assessed to this account?

11-Have any force-placed insurance fees been charged to this account? Yes or No?

12-If yes, how much in total force-placed insurance fees have been charged to this account?

13-Please identify me in writing the provision, paragraph, section or sentence of any note, mortgage, deed of trust or any agreement signed that authorized the assessment, charge or collection of force-placed insurance fees.

14-Do you have any relationship with the agent or agency that placed any policies on the property? If yes, please describe.

15-Do you have any relationship with the carrier that issued any policies on the property? If yes, please describe.

16-Has the agency or carrier you used to place a forced-placed insurance on the property provide you any service, computer system, discount on policies, commissions, rebates or any form of consideration? If yes, please describe?

17-Do you maintain a blanket insurance policy to protect your properties when customer policies have expired? Yes or No?

18-Please send copies of all forced-placed insurance policies that have been ordered on the property from the inception of this account to the present date.

**In regards to Servicing:**

For each of the following questions listed below, please provide a detailed explanation in writing that answers each question. In addition, needed the following answers to question concerning the servicing of this account from its inception to the present date.

1-Did the originator or previous servicers of this account have any financing agreements or contracts with your company or an affiliate of your company?

2-Did the originator or previous servicers of this account receive any compensation, fee, commission, payment, rebate or other financial consideration from your company or affiliate of

your company for handling, processing, originating or administering this loan? If yes, please describe and itemize each and every form of compensation, fee, commission, payment, rebate or other financial consideration paid to the originator of this account by your company or any affiliate.

3-Please identify where the originals of this entire account file are currently located and how they are being stored, kept and protected.

4-Where is the original monetary instrument or mortgage signed located? Please describe its physical location and anyone holding this note as a custodian or trustee, if applicable.

5-Where is the original deed of trust or mortgage and note signed located? Please describe its physical location and anyone holding this note as a custodian or trustee if applicable.

6-Since the inception of this account, has there been any assignment of the monetary instrument/asset to any other party? If the answer is yes, identify the name and addresses of each and every individual, party, bank, trust or entity that has received such assignments.

7-Since the inception of this account, has there been any assignment of the deed of trust or mortgage and note to any other party? If the answer is yes, identify the names and addresses of each individual, party, bank, trust or entity that has received such assignments.

8-Since the inception of this account, has there been any sale or assignment of the servicing right to this mortgage account to any other party? If the answer is yes, identify the names and addresses of each and every individual, party, bank, trust or entity that has received such assignments or sale.

9-Since the inception of this account, have an sub-servicers serviced any portion of this mortgage account? If the answer is yes, identify the names and addresses of each and every individual, party, bank, trust or entity that has sub-serviced this mortgage account.

10-Has this mortgage account been made a part of any mortgage pool since the inception of this loan? If yes, please identify each and every account mortgage pool that this mortgage has been part of from the inception of this account to the present date.

11-Has each and every assignment of the asset/monetary instrument been recorded in the county land records where the property associated with this mortgage account is located?

12-Has there been any electronic assignment of this mortgage with MERS (Mortgage Electronic Registration System) or any other computer mortgage registry service or computer program? If yes, identify the name and address of each and every individual, entity, party, bank, trust or organization or services that have been assigned to mortgage servicing rights to this account s well as the beneficial interest to the payments of principal and interest of this loan.

13-Have there been any investors (as defined by your industry) who have participated in any mortgage-backed security, collateral mortgage obligation or other mortgage security instrument that this mortgage account has ever been a part of from the inception of this account to the present date? If yes, identify the name and address of each and every individual, entity, organization and/or trust.

14-Please identify the parties and their addresses to all sales contracts, servicing agreements, assignments, alonges, transfers, indemnification agreements, recourse agreements and any agreement related to this account from the inception of this account to the present date.

15-Please provide copies of all sales contracts, servicing agreements, assignments, alonges, transfers, indemnification agreements, recourse agreements and any agreement related to this account from the inception of this account to the present date.

16-How much was paid for this individual mortgage account?

17-If part of a mortgage pool, what was the principal balance used by you to determine payment for this individual mortgage loan?

18-If part of mortgage pool, what was the percentage paid of the principal balance above used to determine purchase of this individual mortgage loan?

19-Who was issued the check or payment to for this mortgage loan?

20-Please provide copies of the front and back of the canceled check.

21-Provide any and all due diligence reports by a separate due diligence firm in regards to any pooling agreements that have been generated.

Please provide the documents requested and a detailed answer to each question within the lawful time frame. Upon receipt of the documents and answers, an exam and audit will be conducted that may lead to a further document request and answers to questions under an additional RESPA Qualified Written Request letter.

Copies of this Qualified Written Request, Validation of Debt, TILA and request for accounting and legal records, Dispute of Debt letter are being sent to FTC, HUD, Thrift Supervision, and all relevant state and federal regulators; and other consumer advocates, and my congressman.

The hope is that you answer this RESPA request in accordance with law and the questions, documents, and validation of debt to the penny and correct abuses or schemes uncovered and documented.

### Default Provisions under this QUALIFIED WRITTEN REQUEST

Alleged Lender or any agents, transfers, or assigns omission of or agreement by silence of this RESPA REQUEST via certified rebuttal of any and all points herein this RESPA REQUEST, agrees and consents to including but not limited by an violations of law and/or immediate terminate/remove any and all right, title and interest (liens) in Clients/Homeowners or any property or collateral connected to the same Clients/Homeowners or account # 3010931255-048 waives any and all immunities or defenses in claims and or violations agreed to in this RESPA REQUEST including but not limited by any and all:

1. Clients/Homeowners rights, by breach of fiduciary responsibility and fraud and misrepresentation revocation and resciding any and all power of attorney or appointment

ALLEGED/LENDER may have or may have had in connection with account # 3010931255-048 and any property and/or real estate connected with account # 3010931255-048 right to have any certificated or uncertificated security re-registered in Clients/Homeowners, and only Clients/Homeowners names.

2. Clients/Homeowners right of collection via ALLEGED/LENDER liability insurance and/or bond.

3. Clients/Homeowners entitlement in filing and executing any instruments as power of attorney for and by ALLEGED/LENDER, including but not limited by a new certified security or any security agreement perfected by filing a UCC Financing Statement with the Secretary of Washington.

4. Clients/Homeowners right to damages because of ALLEGED/LENDER USA's wrongful registration, breach of intermediary responsibility with regard to Clients/Homeowners asset by ALLEGED/LENDER issuing to Clients/Homeowners a certified check for the original value of Client/Homeowner monetary instrument.

5.     Client/Homeowner have the right to have account # 3010931255-048 completely set off because ALLEGED/LENDER wrongful failure to registration, breach of intermediary responsibility with regard to Client/Homeowner monetary instrument/asset by ALLEGED/LENDER USA sending confirmation of set off of wrongful liability of Client/Homeowner mistakenly sent to ALLEGED/LENDER USA as a payment for such wrongful liability.

ALLEGED/LENDER USA or any transfers, agents or assigns offering a rebuttal of this RESPA REQUEST must do so in the manner of this RESPA REQUEST in accordance of an in compliance with current statutes and/or laws by signing in the capacity of a fully liable man or woman being responsible and liable under the penalty of perjury while offering direct testimony with the official capacity as appointed agent for ALLEGED/LENDER USA in accordance with ALLEGED/LENDER USA's Articles of Incorporation, By Laws duly signed by a current and duly sworn under oath director(s) of such corporation/ Holding Corporation/ National Association. Any direct rebuttal with certified true and complete accompanying proof must be posted with the Notary address herein within the lawful time-line. When no verified rebuttal of this RESPA REQUEST is made in a timely manner, a "Certificate of Non-Response" serves as ALLEGED/LENDER USA's judgment and consent/agreement by means of silence with any and all claims and/or violations herein-stated in the default provisions or any other law. Power of Attorney: When ALLEGED/LENDER USA fails by not rebutting to any part of this RESPA REQUEST ALLEGED/LENDER USA agrees with the granting unto Client/Homeowner unlimited Power of Attorney and any and all full authorization in signing and endorsing ALLEGED/LENDER name upon any instruments in satisfaction of the obligations of the RESPA REQUEST/Agreement of any agreement arising from this agreement. Preemption of or to any Bankruptcy proceeding shall not discharge any obligations of this agreement. Consent and agreement with this Power of Attorney by ALLEGED/LENDER waives any and all claims of ALLEGED/LENDER and/or defenses and remains in effect until the satisfaction of all obligations by ALLEGED/LENDER have been satisfied.

**RESPA And TILA Request**
**Signatures and Verification**

_Deborah R Beaton_
Deborah R. Beaton

# VERIFICATION

Executed on  2-6-2011

STATE OF  Washington

COUNTY OF  King

I _Lorelei B Faber_  a Notary Public certify that I know or have satisfactory evidence that Deborah R. Beaton appeared before me, and signed this instrument and acknowledged it to be free and voluntary act for the uses and purposes mentioned in the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of Washington that the foregoing paragraph is true and correct.

2-6-2011
DATED:

_Lorelei B Faber_
Notary Public

My appointment expires  9-9-2014

SEAL
LORELEI B. FABER
COMMISSION EXPIRES
NOTARY
PUBLIC
9-09-14
STATE OF WASHINGTON

# EXHIBIT "F" ATTACHED

# (HEREUNDER)

April 21, 2011


DEBORAH R. BEATON
31431 SW 46th Pl.
Federal Way, WA 98023

Contact No.: 253-212-6517


Certified Mailing: 7011 0470 0003 4062 1408


CHASE
PO Box 40696
Columbus, OH 43224

# THIS IS A LETTER OF DISPUTE


Sirs:

I recently pulled my credit report and found CHASE, #156301093**** is reporting

derogatory information on my account.  I do not recall ever having this account and

dispute this.


Sincerely,

Deborah R. Beaton


4.27.11 mailed

7011 0470 0003 4062 1408

USPS - Track & Confirm



Home | Help | Sign In

Track & Confirm      FAQs

# Track & Confirm

## Search Results

Label/Receipt Number: 7011 0470 0003 4062 1408
Expected Delivery Date: May 2, 2011
Class: First-Class Mail®
Service(s): Certified Mail™
Status: Delivered

Your item was delivered at 10:10 am on May 02, 2011 in COLUMBUS, OH 43219.

Detailed Results:

- **Delivered, May 02, 2011, 10:10 am, COLUMBUS, OH 43219**
- **Arrival at Unit, May 02, 2011, 9:04 am, COLUMBUS, OH 43224**
- **Processed through Sort Facility, May 01, 2011, 11:36 pm, COLUMBUS, OH 43218**
- **Acceptance, April 28, 2011, 1:42 pm, LAKEWOOD, WA 98499**

**Track & Confirm**

Enter Label/Receipt Number.

( Go > )

## Notification Options

**Track & Confirm by email**

Get current event information or updates for your item sent to you or others by email. ( Go > )

Site Map   Customer Service   Forms   Gov't Services   Careers   Privacy Policy   Terms of Use   Business Customer Gateway

Copyright© 2010 USPS. All Rights Reserved.     No FEAR Act EEO Data     FOIA

